OPINION OF THE COURT
Emily Jane Goodman, J.
The defendant is charged with endangering the welfare of a child (Penal Law § 260.10). After the District Attorney’s opening statement the defense moved orally to dismiss on the grounds that the conduct alleged, even if proven, would not support the charge. The motion was denied orally during the course of the trial and is now denied by written decision.
The complaint and corroborating affidavit allege that the defendant, an adult male, touched the hair and shoulder of an *583 11-year-old girl and asked her to undress and get into his bed, which the child declined to do.
The thrust of the defense motion is that "nothing happened” even if the words were spoken. The issue, then, is whether those words, in this context, are sufficient. For purposes of narrowing the issue the allegation that the defendant touched the child’s hair and shoulders is being set aside.
The relevant statute reads in pertinent part that:
"[A] person is guilty of endangering the welfare of a child when:
"1. He knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a * * * child”. (Penal Law § 260.10.)
"Evidence is 'legally sufficient’ when, if accepted as true, it would establish every element of the offense charged.” (People v Lynch, 116 AD2d 56, 62 [1st Dept 1986]; CPL 70.10 [1].) Therefore, for purposes of this motion, what must be determined is whether the defendant’s alleged behavior, if accepted as true, constituted actions "likely to be injurious to the * * * mental or moral welfare” of the child. (Penal Law § 260.10 [I]-)
THE STATUTORY LANGUAGE AND LEGISLATIVE HISTORY
In using the words "mental welfare” and "moral welfare”, the Legislature elected not to limit the statute to the physical welfare of the child, meaning that physical or sexual contact is not required. Of course, conduct involving sexual contact is specifically covered by other statutes such as sexual abuse (Penal Law §§ 130.60, 130.65) and rape (Penal Law §§ 130.25, 130.30, 130.35).
Nor does the endangerment statute require that the mental or moral welfare of the child be proven to actually be impaired. The relevant section of the current statute is derived from former Penal Law § 483 (repealed by L 1965, ch 1030) which was divided into two parts, one which prohibited conduct that caused or permitted a child’s morals to become impaired and another which prohibited exposing a child to the likelihood of impaired moral welfare. The Legislature rejected and discarded the first section which required that the conduct actually cause impairment.
LANGUAGE AS CRIME
Language can constitute criminal conduct under certain *584 statutes. Examples of this are aggravated harassment (Penal Law § 240.30) (which prohibits communication by telephone, telegraph or in written form in a manner likely to cause annoyance or alarm where there is the intent to harass, annoy, threaten or alarm another person), and falsely reporting an incident in the third degree (Penal Law § 240.50) (its prohibitions include the knowing circulation of false reports or warnings of an alleged occurrence of a crime, catastrophe or emergency from which it is likely that public alarm or inconvenience will result).
A further example of the recognition that language can cause harm is verbal sexual harassment in the workplace under title VII of the Civil Rights Act of 1964, as amended by 42 USC § 2000e et seq. (Meritor Sav. Bank v Vinson, 477 US 57, 91 L Ed 2d 49 [1986]), Executive Law § 296 (see, Matter of State Univ. v State Human Rights Appeal Bd., 81 AD2d 688 [3d Dept 1981], affd 55 NY2d 896) and Administrative Code of City of New York § 8-107. (Rudow v New York City Commn. on Human Rights, 123 Misc 2d 709 [Sup Ct, NY County 1984], affd 109 AD2d 1111.)
Also, the statute prohibiting the dissemination of indecent material to minors (Penal Law § 235.21) underscores that sexually oriented language can be harmful to children. That statute’s prohibitions include knowingly selling or lending for profit any book, pamphlet, magazine, or sound recording to a child which depicts or describes certain types of sexual conduct and which is "harmful to minors”. (Penal Law § 235.21 [1] [b].)
CASE LAW
The Court of Appeals, in a memorandum decision (People v Rice, 17 NY2d 881 [1966]), upheld a conviction on the charge of endangering the welfare of a child where the defendant, using obscene words, asked two young girls to perform an immoral act.
The conviction of a defendant on a charge of endangering the welfare of a child was affirmed by the Third Department in People v Ahlers (98 AD2d 821 [3d Dept 1983]) where the defendant told one child to engage in sexual activity with another child. The conduct complained of was the defendant’s verbal instructions to the children.
In People v Spencer (66 Misc 2d 658 [Crim Ct, Queens County 1971]), a defendant was charged with endangering the *585 welfare of a child for allegedly slowing down his vehicle to keep pace with a child who was walking and offering the child money to engage in a sexual act with him. The defendant argued that such conduct, in the absence of physical conduct, did not fall under Penal Law § 260.10. However, the court held that "the solicitation in question is well within the parameters of the activity forbidden” by the statute. (Supra, at 662.)
In a case where the act of the defendant was apparently not intentionally directed at a child (People ex rel. Tanis v Benedict, 28 NYS2d 202 [Sup Ct, Monroe County 1941]) the court held that the defendant’s unconcealed sexual act in a car which was in plain view of a child who walked by and saw the act fell under the predecessor endangering the welfare of a child statute. There, as here, no physical contact was had between the defendant and the child.
CONCLUSION
That the alleged conduct of the defendant did not involve physical contact with the child does not lead to the conclusion that such conduct was not "likely to be injurious to the * * * mental or moral welfare” of the child. (Penal Law § 260.10 [1].) If proven, the conduct here, albeit verbal, is degrading and abusive toward the young girl, her vision of herself, and her expectations of the world. "Emotional maltreatment has a decidedly adverse effect on a child’s learning ability, achievement level, and general development.” (US Dept of Health, Educ and Welfare, 1 Child Abuse and Neglect: The Problem and Its Management, at 9 [1976].) Acts of emotional maltreatment "damage immediately or ultimately the behavioral, cognitive, affective, or physical functioning of the child.” (Brassard & Gelardo, Psychological Maltreatment: The Unifying Construct in Child Abuse and Neglect, 16 [No. 2] Sch Psychology Rev 128 [1987].)
The argument that endangering a child requires sexual or other actual physical contact has no basis in either statutory or case law. To accept such an argument would undermine the purpose and effectiveness of the statute and would particularly undermine the role of the court as a protector of young children, a role as essential as protecting the rights of the accused. The courts have a compelling duty to protect the interests of children. (See, Finlay v Finlay, 240 NY 429 [1925]; Matter of Bachman v Mejias, 1 NY2d 575 [1956].)
*586 This court holds that the words allegedly spoken by the defendant — telling an 11-year-old girl to get undressed and get into bed with him — are in and of themselves sufficient, if true, to constitute acting "in a manner likely to be injurious to the physical, mental or moral welfare of a * * * child.” (Penal Law § 260.10 [1].) Therefore, while defense counsel may argue that "nothing happened”, and while in the scheme of atrocities and abuse perpetrated upon children, less happened than might have had the child not, according to the People’s theory of the case, resisted the defendant’s demands, still his alleged conduct — even limited to the words — would support the charge.
For all the above reasons, this court denies the defendant’s motion to dismiss.
This constitutes the decision and order of the court. Clerk to serve both sides.