■ ALLSTATE INSURANCE COMPANY, Appellant, v EDWARD MUGAVERO et al., Respondents.—In an action for a judgment declaring that the plaintiff is not obligated to defend and indemnify the defendants Edward Mugavero and Ann Mugavero in an action brought against them by the defendants Ellen B., individually and on behalf of the infant defendants Christian J.B. and Teresa C.B., the plaintiff appeals from so much of an order of the Supreme Court, Suffolk County (Doyle, J.), entered February 1, 1989, as denied its cross motion for summary judgment and granted that branch of the motion by the defendants Edward Mugavero and Ann Mugavero which was for summary judgment declaring that the plaintiff was obligated to defend them in the aforenoted action.

Ordered that the order is affirmed insofar as appealed from, with one bill of costs payable to the defendants appearing separately and filing separate briefs.

The defendant Ellen B. commenced the underlying action herein on behalf of herself and her two infant children against the defendants Edward Mugavero and Ann Mugavero. The gravamen of that complaint was based upon the allegation that Edward had assaulted, sodomized and sexually abused the children while his wife, Ann was baby-sitting them. However, in addition to alleging intentional conduct on the part of Edward, the complaint alternatively asserted claims against Edward based on allegations that his acts were negligently committed, or were intentionally committed, but "without intending the resultant serious injuries thereby sustained" by the children; and further alleged that Ann was negligent in her supervision of the children.

The Mugaveros forwarded the summons and complaint to the plaintiff Allstate Insurance Company (hereinafter Allstate), which had issued them a homeowner's policy, on the

ground that Allstate was obligated to defend and indemnify them in the underlying action.

Allstate thereafter commenced this declaratory judgment action, claiming that it had no duty to defend or indemnify either Mugavero, relying upon a provision in the homeowner's policy, which precludes coverage to any named insured for "bodily injury * * * intentionally caused by an insured person". On the parties' motion and cross motion for summary relief, the Supreme Court, in relevant part, declared that Allstate was required to defend the Mugaveros with regard to the underlying action *(see, Allstate Ins. Co. v Mugavero,* 142 Misc 2d 361, 364-365). We now affirm.

It is well-settled law that "[t]he duty to defend insureds * * * is derived from the allegations of the complaint and the terms of the policy. If the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend *(Ruder & Finn v Seaboard Sur. Co.,* 52 NY2d 663, 669-670). Moreover, when an exclusion clause is relied upon to deny coverage, the insurer has the burden of demonstrating that the 'allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto,* are subject to no other interpretation' *(International Paper Co. v Continental Cas. Co.,* 35 NY2d 322, 325)" *(Technicon Elecs. Corp. v American Home Assur. Co.,* 74 NY2d 66, 73-74).

We are cognizant of the horrific nature of sexual molestation of children. Nevertheless, that factor is not relevant nor should it govern our decision concerning insurance coverage in this case. It is not disputed by our dissenting colleague that the complaint in the underlying action herein asserts claims based upon the alleged negligence of the defendants, which are not excluded by any of the provisions in the Allstate policy. In analogous cases involving, in relevant part, the alleged sexual abuse of an adult, the courts have not looked beyond the allegations in the complaint in determining whether the insurance company which had issued a homeowner's policy had a duty to defend its insured *(see, State Farm Fire & Cas. Co. v Irene S.,* 138 AD2d 589, 591; *New York Cent. Mut. Fire Ins. Co. v Heidelmark,* 108 AD2d 1093). Allstate nevertheless claims that Edward Mugavero did not and could not have negligently committed the conduct complained of in the underlying action since the very nature of that alleged conduct, sexual abuse of children, compels an inference of intent as a matter of law. We disagree.

Initially, we note that "[i]f Allstate * * * believed that some acts are so certain to cause injury that an intent to harm should be inferred to the insured, then the exclusion clause should have provided for this expressly. * * * The fact that the exclusion clause does not provide for an inference of * * * harm counsels against this court's imposition of such a clause" *(Allstate Ins. Co. v Jack S.,* 709 F Supp 963, 966-967; *see, Baldinger v Consolidated Mut. Ins. Co.,* 15 AD2d 526, *affd* 11 NY2d 1026). As conceded by Allstate, no New York case has held that in an insurance context, an intent to injure may be inferred as a matter of law simply from the nature of the alleged conduct. In any event, " '[i]ntent is not established merely because an individual has suffered severe emotional distress as the proximate result of another's actions' (Minzer, Damages in Tort Actions, § 6.12 [1], at 6-45)" *(Richard L. v Armon,* 144 AD2d 1, 5). Whether an inference should be drawn that Edward had intended to harm the children from the nature of his acts alone is a determination to be made by the trier of fact *(see, Richard L. v Armon, supra,* at 5).

Further, in *Public Serv. Mut. Ins. Co. v Goldfarb* (53 NY2d 392, 399-400), the Court of Appeals addressed the question of whether the public policy of this State precluded insurance coverage where the insured had been convicted of sexual abuse of the adult complainant. In determining that the public policy of this State did not preclude coverage, the court stated that "[w]hether such coverage is permissible depends upon whether the insured, in committing his criminal act, intended to cause injury. One who intentionally injures another may not be indemnified for any civil liability thus incurred. However, one whose intentional act causes an unintended injury may be so indemnified" *(Public Serv. Mut. Ins. Co. v Goldfarb, supra,* at 399). Neither Allstate nor our sister States in the cases relied upon by our dissenting colleague has "provided us with any reason in principle to apply a different rule of public policy when liability is claimed to arise from acts of sexual assault" involving children *(MacKinnon v Hanover Ins. Co.,* 124 NH 456, 461, 471 A2d 1166, 1168). Contrary to Allstate's contention, the ruling in *MacKinnon v Hanover Ins. Co. (supra)* was not overruled by the decision in *Vermont Mut. Ins. Co. v Malcolm* (128 NH 521, 517 A2d 800) *(see, Allstate Ins. Co. v Jack S.,* 709 F Supp 963, 967, n 1, *supra; cf., Fire Ins. Exch. v Abbott,* 204 Cal App 3d 620, 251 Cal Rptr 620, 628, 629-630, n 10).

Since we find that Allstate has a duty to defend the Mugaveros under the homeowner's policy purchased by them, the

other contention raised by Allstate need not be addressed. Brown, J. P., Lawrence and Kooper, JJ., concur.

Balletta, J., dissents and votes to reverse the order insofar as appealed from and to grant the plaintiff's motion for summary judgment declaring that it has no duty to defend the defendants Ann and Edward Mugavero, with the following memorandum: Despite what it concedes to be the "horrific nature of [the] sexual molestation of children", the majority concludes that an insurer has a duty under a homeowner's insurance policy to defend the insured in a suit brought against the insured to recover damages for child sexual abuse. I do not agree and vote to grant summary judgment to the plaintiff Allstate declaring that it has no duty to defend the Mugaveros in the personal injury action.

Briefly, the defendant Ellen B. commenced an action against the defendants Mugavero based on allegations that Edward Mugavero had sodomized and sexually abused the infant defendants Christian B. and Teresa B. while his wife, Ann Mugavero, was baby-sitting the children. The complaint set forth five causes of action to wit: (1) that Edward Mugavero "intentionally and without provocation assaulted, sodomized and sexually abused" Christian and Teresa B.; (2) that Edward Mugavero "did intentionally assault, sodomize and sexually abuse" the infants "without intending the resultant serious injuries thereby sustained" by the infants; (3) that Edward Mugavero "did negligently and carelessly, and with wanton disregard of others, assault, sodomize and sexually abuse" the infants; (4) that Ann Mugavero was negligent in allowing her husband to assault the children and in failing to properly safeguard the children; and (5) that Ellen B., the infant's mother, had expended money to relieve the infants' pain and suffering caused by the Mugaveros' conduct.

The bill of particulars submitted by the infants indicates that the abuse took place between 1979 and April 1984 (with respect to the boy) and between January and April of 1984 (with respect to the girl). As of April 1984, Christian B. was nearly 10 years old (date of birth May 18, 1974) and Teresa B. was six years old (date of birth October 1, 1977). The bill of particulars alleged, *inter alia,* the following conduct:

"Defendant, Edward Mugavero, kissed infant plaintiff, Christian * * * on the lips with his tongue; he humped or rubbed up against him; he opened Christian's fly in his pants and fondled his penis; he took Christian's hand and placed it on his penis; he put his mouth and lips on Christian's penis; and he put his penis in Christian's anus".

"Defendant, Edward Mugavero, put his finger in infant plaintiff, Teresa['s] vagina; he kissed her; and he felt her sexual organs".

The children provided sworn testimony as to the above conduct at their examinations before trial. In addition, Christian B. testified at his deposition that when Mugavero had finished anally sodomizing him, Mugavero warned him: "If you tell anybody, you know, I'm going to kill you". Christian was crying. On another occasion, according to Christian's testimony, Mugavero warned: "Don't tell anybody or I'm going to get you". Christian remembered his sister crying out "Ouch" when she was being molested.

On April 28, 1984, the date of his arrest, Edward Mugavero purportedly made a statement to the police wherein he admitted to rubbing, kissing and sucking Christian's penis and to licking Teresa's vagina. Mugavero also purportedly told police that he had always told the boy that he loved him and that he hugged both the boy and the girl. However, that written statement was never signed by Mugavero, and at no point did he ever state that he did *not* intend to commit the acts or to hurt the children. Edward Mugavero ultimately pleaded guilty to an unspecified crime. In fact, the record contains only two references to the criminal proceedings. First, at his examination before trial, Christian B. responded to the question "Did you ever have any conversations with Mr. Mugavero concerning these incidents * * * after the last time it happened up to today?", as follows: "No. Like, after he [Mugavero] got out of jail, he followed me to the bus stop in his car and he gave me the finger and stuff". Second, in a reply affirmation, the Mugaveros' attorney stated that "the sodomy and sexual abuse indictment against Edward Mugavero was dismissed on motion of the District Attorney as a result of plea negotiations which resulted in a guilty plea to an unrelated and far less serious crime".

The Mugaveros forwarded the complaint in the personal injury action to Allstate requesting that Allstate appear in the action and provide a defense on their behalf pursuant to the terms of their homeowner's policy issued by Allstate. Allstate replied that the policy did not cover willful or criminal acts, but that it would provide a defense, reserving its right to disclaim coverage pending the outcome of a further investigation and a declaratory judgment action regarding its duty to defend.

The homeowner's policy issued by Allstate provides that

Allstate "will pay all sums * * * which an insured becomes legally obligated to pay as damages because of bodily injury". The policy also provides that "if an insured person is sued for these [covered] damages, we [Allstate] will provide a defense". Finally, the policy expressly states: "We do not cover bodily injury or property damage intentionally caused by an insured person".

Allstate commenced the instant declaratory judgment action asserting that the acts alleged in the underlying action were, by their very nature, intentional and/or criminal in nature and were such that it might reasonably have been expected that injury to a minor child would result. (At the time of the alleged acts, Christian B. was less than 10 years old and Teresa B. was only 6 years old.) Moreover, the depraved acts of the insured Edward Mugavero were, by their very nature, intended to cause injury to the children. Thus, Allstate argued, the alleged acts were excluded by the policy from coverage, and Allstate had no duty to either defend or indemnify the Mugaveros in the underlying action.

The defendants Ann and Edward Mugavero argued that the acts alleged, as well as the attendant injuries, did not fall within the exclusion provision. Counsel for the Mugaveros asserted that the alleged injuries were the unintended consequences of intentional acts and, therefore, covered by the policy. Further, he argued that the intent to injure may not be presumed where the injuries are not the obvious and immediate result of force. The counsel on behalf of the infants contended that Edward Mugavero's purported statement to the police may indicate that he did not intentionally harm the children, and suggests that he may have believed that he was expressing love or affection toward the children.

Under this set of circumstances, we are confronted with an issue of apparent first impression in this State; namely, whether an insurer has a duty to defend and indemnify an insured, under a homeowner's policy, in an action for damages resulting from intentional acts of forcible sexual abuse of children, including penetration, where the policy excludes coverage for "bodily injury intentionally caused by an insured". While the majority would say yes, I strongly believe that the answer must be a resounding no.

It is well established that the duty to provide a defense in an appropriate action against an insured is broader than the duty to indemnify and attaches even when indemnity is unclear *(see, Ruder & Finn v Seaboard Sur. Co.,* 52 NY2d 663, 669-670; *see also, Servidone Constr. Co. v Security Ins. Co.,* 64

NY2d 419; *Seaboard Sur. Co. v Gillette Co.,* 64 NY2d 304; *International Paper Co. v Continental Cas. Co.,* 35 NY2d 322). The scope of an insurer's duty to defend is determined from the allegations of the underlying complaint and the terms of the policy *(see, Colon v Aetna Life & Cas. Ins. Co.,* 66 NY2d 6).

When the complaint, liberally construed, sets forth a claim ostensibly within the coverage of the policy, the insurer must provide a defense, no matter how groundless, false or baseless the suit may be *(see, Ruder & Finn v Seaboard Sur. Co., supra).* However, when the allegations of the complaint allow for no interpretation that will bring them within the policy protections, there is no duty to defend as a matter of law *(see, State Farm Ins. Co. v Trezza,* 121 Misc 2d 997, 1001, citing *Lionel Freedman, Inc. v Glens Falls Ins. Co.,* 27 NY2d 364). Moreover, the duty does not attach where, as a matter of law, there is no factual or legal basis on which the insurer may be held liable for indemnification *(see, Spoor-Lasher Co. v Aetna Cas. & Sur. Co.,* 39 NY2d 875, 876).

The burden of proving that a claim falls within the exclusionary provisions of the insurance policy rests with the insurer *(see, Neuwirth v Blue Cross & Blue Shield,* 62 NY2d 718; *Frank v State-Wide Ins. Co.,* 151 AD2d 458, 460). While it is true that policies of insurance are to be construed liberally in favor of the insured and strictly against the insurer, where the provisions of the policy are clear and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement *(see, Government Employees Ins. Co. v Kligler,* 42 NY2d 863, 864; *see also, State Farm Mut. Auto. Ins. Co. v Westlake,* 35 NY2d 587; *Acorn Ponds v Hartford Ins. Co.,* 105 AD2d 723). The terms of the policy should be examined from the point of view and understanding of the average reasonable person *(see, Lewis v Ocean Acc. & Guar. Corp.,* 224 NY 18, 21; *see also, Ace Wire & Cable Co. v Aetna Cas. & Sur. Co.,* 60 NY2d 390, 398). "We all know that a contract of insurance, drawn by the insurer, must be read through the eyes of the average man on the street or the average housewife who purchases it" *(see, Lachs v Fidelity & Cas. Co.,* 306 NY 357, 364). Can it honestly be said that the average person expects his or her homeowner's insurance company to indemnify him or her for sodomizing and sexually abusing children under the age of 10?

The homeowner's insurance policy issued by Allstate in the case at bar expressly excluded injuries "intentionally caused by an insured person". In construing such exclusionary clauses, the courts have often expressed the opinion that

"regardless of the initial intent or lack thereof as it relates to causation, or the period of time involved, if the resulting damage could be viewed as unintended by the fact finder the total situation could be found to constitute an accident" within the meaning of the policy thus triggering the insurance company's duty to defend *(McGroarty v Great Am. Ins. Co.,* 36 NY2d 358, 364-365). The courts have generally applied this rule to require the insurance company to defend its insured in cases where the underlying action alleged conduct which, although amounting to an intentional assault, may have resulted in unintended damages *(see, e.g., Spielfogel v North Riv. Ins. Co.,* 148 AD2d 696; *Home Mut. Ins. Co. v Preston,* 155 AD2d 932; *Nationwide Mut. Fire Ins. Co. v Burke,* 90 AD2d 626).

The allegations of the second cause of action set forth in the complaint in the underlying action claim that Mugavero "did intentionally assault, sodomize and sexually abuse [the infants] * * * without intending the resultant serious injuries * * * sustained". This would seem to place this case within the above rule allowing a defense for the insured. The case at bar, however, is set apart in that it is the first case asking the question of whether an insured is entitled to a defense for a claim arising out of the intentional sexual abuse of young children.

In *McGroarty v Great Am. Ins. Co. (supra),* which is often cited for the "unintentional consequences of intentional acts" principle, the central issue was whether there was an "accident" within the meaning of the insurance policy in question, where the plaintiff's building gradually cracked, settled and was damaged over a period of several months due to the continuing excavation and construction on certain adjacent property owned by the defendant's insured. The Court of Appeals allowed the coverage to be triggered based on the "transaction as a whole" test citing Judge Cardozo's statement in *Messersmith v American Fid. Co.* (232 NY 161, 166) that "[t]he character of the liability is not to be determined by analyzing the constituent acts which, in combination, make up the transaction, and viewing them distributively. It is determined by the quality and purpose of the transaction as a whole." This should be read together with the court's statement in *McGroarty* that: "[o]ne often contemplates and envisions a sudden, or catastrophic event * * * which is unanticipated and the product of thoughtlessness rather than willfulness. But a broader view must be taken of the term for otherwise how could we classify catastrophic results which are

the unintended fruits of willful conduct? Certainly one may intend to run a red light, but not intend that the catastrophic result of collision with another car occur. Calculated risks can result in accidents" *(McGroarty v Great Am. Ins. Co., supra,* at 363).

In *McGroarty,* the Court of Appeals determined that the damages occurred to the plaintiff's building as a result of the insured's calculated risk in continuing construction even though aware of the defects *(McGroarty v Great Am. Ins. Co., supra,* at 364). However, that type of calculated risk is a far cry from forcibly engaging in deviant sexual intercourse with a minor. Furthermore, even under the "transaction as a whole" standard, the underlying acts cannot be considered as falling within the scope of the policy. After all, what is the "quality and purpose of the [subject] transaction as a whole" *(Messersmith v American Fid. Co., supra,* at 166), other than to subject these infants to physical and emotional harm for the sake of sexual gratification.

A rule has also developed that where the act resulting in injury has criminal sanctions attached to it, as in the instant case, the insurer may not deny coverage merely on that basis. "The mere fact that an act may have penal consequences does not necessarily mean that insurance coverage for civil liability arising from the same act is precluded by public policy" *(Public Serv. Mut. Ins. Co. v Goldfarb,* 53 NY2d 392, 399, citing *Messersmith v American Fid. Co.,* 232 NY 161, 162-165, *supra).*

In *Public Serv. Mut. Ins. Co. v Goldfarb (supra),* the issue was whether a policy of professional liability insurance issued by the Public Service Mutual Insurance Company afforded coverage to a dentist, Goldfarb, in a civil suit commenced by a former patient alleging an act of sexual abuse during the course of dental treatment. Goldfarb had been convicted of the crime of sexual abuse in the third degree as a result of his conduct. The policy provided insurance coverage " 'for damages because of injury resulting from professional dental services rendered * * * and resulting from any claim or suit based upon * * * [m]alpractice, error, negligence or mistake, assault, slander, libel [or] *undue familiarity" (Public Serv. Mut. Ins. Co. v Goldfarb, supra,* at 398 [emphasis added]). The Court of Appeals held that a claim of sexual abuse fell within the meaning of the policy term "undue familiarity" *(Public Serv. Mut. Ins. Co. v Goldfarb, supra,* at 398).

The court in *Public Serv.* then went on to "address the

question whether the public policy of this State precludes insurance coverage for a claim of sexual abuse in the course of dental treatment" *(Public Serv. Mut. Ins. Co. v Goldfarb, supra,* at 399). In discussing this issue, the Court of Appeals stated: "Plaintiff notes that defendant was convicted of the crime of sexual abuse in the third degree and argues that, as a matter of public policy, he may not be indemnified for any civil liability arising out of this criminal act. We disagree. The mere fact that an act may have penal consequences does not necessarily mean that insurance coverage for civil liability arising from the same act is precluded by public policy. (See *Messersmith v American Fid. Co.,* 232 NY 161, 163-165; cf. *Miller v Continental Ins. Co.,* 40 NY2d 675.) Whether such coverage is permissible depends upon whether the insured, in committing his criminal act, intended to cause injury. One who intentionally injures another may not be indemnified for any civil liability thus incurred. However, one whose intentional act causes an unintended injury may be so indemnified. *(Messersmith v American Fid. Co.,* 232 NY 161, *supra.)" (Public Serv. Mut. Ins. Co. v Goldfarb, supra,* at 399.)

Two observations are in order here. First, there is nothing in the language quoted above from the *Public Serv.* case which would act as a ban to precluding insurance coverage for the intentional sexual abuse of children as a matter of course. Stating that insurance coverage for a criminal act is not necessarily precluded by public policy is not the same as saying that public policy ought to preclude insurance coverage in this instance. Second, a close reading of the *Messersmith* case relied upon by the Court of Appeals in both *McGroarty* and *Public Serv.* reveals that it deals with an entirely dissimilar situation.

In *Messersmith,* the owner-insured of an automobile allowed an unlicensed minor to operate the motor vehicle, and the minor was involved in an accident which resulted in injuries to a third person. When that person sought to recover damages, the insurance company disclaimed coverage, arguing that the accident resulted not from the infant's operation of the car but from the insured's willful entrustment of the car to the infant in violation of a statute. The court rejected the argument that the statutory violation precluded insurance coverage, noting that many automobile accidents occurred as a result of violations of law *(Messersmith v American Fid. Co., supra,* at 164). To hold otherwise, the court apparently felt, would reduce "indemnity to a shadow" *(Messersmith v American Fid. Co., supra,* at 163). The insured's intentional act of

wrongful entrustment of the motor vehicle did not preclude indemnity since the event resulting in the claim was fortuitous *(Messersmith v American Fid. Co., supra,* at 165).

In the case at bar, the resulting injuries cannot be thought of as fortuitous; the nexus between the intended act and the consequent result is much closer. It is completely unreasonable to believe that the acts of sexual misconduct committed by Mugavero could result in anything but harm to the children. Moreover, although the *Messersmith* court spoke of a "fund from which the victim can be paid" *(Messersmith v American Fid. Co., supra,* at 164), it is questionable whether this can be construed as an endorsement of a duty to defend in an action to recover damages resulting from sexual abuse of children.

Furthermore, a finding of *no* insurance coverage in this case involving child sexual abuse would not violate the unintended consequences of intentional acts principle set forth in *McGroarty (supra).* The principle is but one way of trying to define the term "accident" within the area of insurance law.

"The multifaceted term 'accident' is not given a narrow, technical definition by the law. It is construed, rather, in accordance with its understanding by the average man * * * who, of course, relates it to the factual context in which it is used * * *.

" '[I]t is customary to look at the casualty from the point of view of the insured, to see whether or not, from his point of view, it was unexpected, unusual and unforeseen' " *(Miller v Continental Ins. Co.,* 40 NY2d 675, 676-677; *see also, Nallan v Union Labor Life Ins. Co.,* 42 NY2d 884). It has also been stated that " '[t]he criterion by which the accidental character of the harm is determined is the nonforeseeability or foreseeability of the harm as the consequence of the insured's voluntary act' " *(Continental Cas. Co. v Plattsburgh Beauty & Barber Supply,* 48 AD2d 385, 387; *see also, County of Broome v Aetna Cas. & Sur. Co.,* 146 AD2d 337, 340 ["personal injuries * * * are expected if the actor knew or should have known there was a substantial probability that a certain result would take place"]).

In truth and in fact, it cannot be said that the injuries alleged by the infants herein were unexpected, unusual or unforeseen by Mugavero. The depraved nature of the acts can lead to only one conclusion—that the damages alleged "are the intended result which flows directly and immediately from [the insured's] intentional act, rather than arising out of a

chain of unintended though foreseeable events that occurred after the intentional act" *(Ford Nursing Home Co. v Fireman's Ins. Co.* 86 AD2d 736, 737, *affd* 57 NY2d 656; *see also, Krulls v Hartford Acc. & Indem. Co.,* 144 AD2d 744).

Recently, this court, in *State Farm Fire & Cas. Co. v Irene S.* (138 AD2d 589), held that State Farm was obligated to defend its insured in an action brought by Irene S. alleging that the insured had beaten and raped her. The court noted that the underlying complaint contained two causes of action which "merely alleged intentional acts which resulted in bodily injury [rather than alleging an intent to inflict the specific injuries]. Our courts have recognized that, 'it is not legally impossible to find accidental results flowing from intentional causes, i.e., that the resulting damage was unintended although the original act or acts leading to the damage were intentional' " *(State Farm Fire & Cas. Co. v Irene S., supra,* at 591, quoting *McGroarty v Great Am. Ins. Co.,* 36 NY2d 358, *supra).* In arriving at this conclusion, the court relied in part upon an earlier decision in the same case *(see, State Farm Fire & Cas. Co. v Shapiro,* 118 AD2d 556) which had vacated the insured's default in answering the insurance company's complaint for a declaratory judgment. Besides finding a reasonable excuse for the default, the court also found that the insured had established a "sufficient statement of the merits", noting that the insured's "claim that the damages sustained by [Irene S.] were unintended, if proved, would be within the policy coverage and, therefore, State Farm would be obligated to defend the underlying action against the [insured]" *(State Farm Fire & Cas. Co. v Shapiro, supra,* at 557-558).

*State Farm,* however, involved a sexual assault upon an adult who contracted herpes as a result thereof. The transmission of herpes may be seen as being unintended and thus negligent, in that the insured may not have been aware of the active status of his disease. Additionally, the record in *State Farm* indicated that the insured and the victim had been involved in a sexual relationship prior to the incident, engaging in intercourse only when the disease was not active. These factors distinguish *State Farm* from the case at bar.

There is, however, a qualitative difference when the victims of sexual abuse are children. This particularly egregious act clearly harms the child victim *(see generally, Matter of Nicole V.,* 71 NY2d 112; *People v Keindl,* 68 NY2d 410; *People v Henson,* 33 NY2d 63; *People v Benjamin R.,* 103 AD2d 663; *People v Doe,* 137 Misc 2d 582). Certainly, the publicity given

this activity in the past 15 years has made it clear that any act of this nature will harm the victim.

Indeed, the laws of this State are replete with provisions providing a special measure of protection for children, thus reflecting an awareness of the inherent injury to children subjected to sexual abuse *(see, e.g., People v Keyes,* 75 NY2d 343 [child pornography]; *People v Cintron,* 75 NY2d 249 [CPL art 65]). At least one court has noted that "[j]ust as rape inflicts physical hurt or harm to the human body, so also do acts of sodomy and sexual abuse, though neither necessarily leave permanent physical scars" *(County of Chemung v Hartford Cas. Ins. Co.,* 130 Misc 2d 648, 650). There can be, therefore, no reasonable argument that the injuries resulting from the sexual abuse of children could be anything but intended; the cause and effect relationship is simply too substantial to allow any other conclusion. This idea has taken hold in almost all other jurisdictions that have dealt with this issue.

In almost every State that has addressed this question, the courts have found no coverage to defend or indemnify. Interestingly enough, while most of these States follow a general rule that an insured's conduct only comes within the policy exclusion when there is a subjective intent to injure, they find no coverage where the act complained of is the sexual abuse of a minor. These jurisdictions impute the intent to injure to the actor as a matter of law. Some States have relied upon an "objective" standard of intent stating, in essence, that no reasonable person could assault a child without intending the harm flowing therefrom.

Case law development in the State of Florida is illustrative of this trend. In an early case, *Zordan v Page* (500 So 2d 608 [Fla]), the insured was sued for emotional injuries resulting from the sexual fondling of his seven-year-old stepdaughter. The complaint contained no allegations of penetration or violence and alleged that the emotional trauma was neither expected nor intended by the insured. At a deposition, the insured denied the allegations. In the subsequent declaratory judgment action, the trial court granted summary judgment to the insurers, concluding that there was no insurance coverage. However, on appeal, the District Court of Appeals of Florida, Second District, reversed, finding that unless the insured had the *specific subjective intent* to injure, the intentional injury exclusion provision of the policy would not apply. In a dissenting opinion, Judge Frank urged the court to adopt "the principle that one intends the natural and probable conse-

quences of his acts" *(supra,* at 613) when applying an exclusion provision. "It defies human response and sensitivity to conclude that the inevitable product of the sexual molestation of a child is not intended" *(Zordan v Page, supra,* at 613).

The following year, in *Landis v Allstate Ins. Co.* (516 So 2d 305 [Fla]), Florida's Third District Court of Appeals rejected *Zordan.* In *Landis,* the insureds were operators of a day-care center who were convicted of sexual battery to children. After the parents brought suit to recover for damages, the insureds sought coverage under their homeowner's policy. The trial court granted judgment in favor of the insurer, holding that there was no obligation to defend the insureds. In a Per Curiam opinion, the District Court of Appeals affirmed, concluding that the acts complained of "were clearly intentional or deliberate" *(Landis v Allstate Ins. Co., supra,* at 306-307) and fell within the intentional injury exclusion provision of the insurance policy.

The Supreme Court of Florida affirmed *(Landis v Allstate Ins. Co.,* 546 So 2d 1051 [Fla]), concluding that "no coverage could exist under this clause" *(Landis v Allstate Ins. Co., supra,* at 1053). Adopting the reasoning of Judge Frank's dissent in the *Zordan* case, the court determined that "[t]o state that a child molester intends anything but harm and long-term emotional anguish to the child defies logic. The petitioners argue that [the insured's] diminished mental capacity prevented her from forming any specific intent to harm the children. [Nevertheless] we believe that specific intent to commit harm is not required by the intentional acts exclusion" *(Landis v Allstate Ins. Co., supra,* at 1053).

In *CNA Ins. Co. v McGinnis* (282 Ark 90, 666 SW2d 689), a 1984 Arkansas case, the insurer sought a judgment declaring that it had no duty to defend and indemnify its insured under a homeowner's policy in an action for damages resulting from the insured's sexual abuse of his stepdaughter. It was established that the insured had sexual relations with the victim almost every day from the time she was 10 until the time she was 16. The insured offered expert testimony that "males who are involved in such [acts] do not expect or intend * * * any injury" *(CNA Ins. Co. v McGinnis, supra,* 282 Ark, at 92, 666 SW2d, at 690). The court, however, rejected this evidence and concluded that the standard is what the "plain ordinary person would expect and intend to result from a mature man's deliberately debauching his [infant] stepdaughter * * * for years" *(CNA Ins. Co. v McGinnis, supra,* 282 Ark, at 93, 666 SW2d, at 691).

The majority of the States that have disallowed insurance

coverage for harm from sexual molestation of children maintain the subjective intent standard, but find that sexual molestation of children is an act so permeated with the consequent injury that, as a matter of law, intent to injure is imputed to the actor.

For instance, in *Linebaugh v Berdish* (144 Mich App 750, 376 NW2d 400), in a Per Curiam opinion, the court inferred intent to injure from the nature of the sexual conduct where a 21-year-old male disc jockey engaged in sexual activity with a consenting 14-year-old girl. The court found that the distinction between the felonious acts and the unintended felonious results was a distinction without a difference, and that the harm was a natural and foreseeable and expected consequence of the conduct *(Linebaugh v Berdish, supra,* at 403).

Several years later, the Michigan Court of Appeals imputed intent to a mentally retarded insured who forced his penis into the mouth of a 10-year-old boy *(see, Auto-Owners Ins. Co. v Gardipey,* 173 Mich App 711, 434 NW2d 220). Of particular note is the fact that the language of the policy exclusion was the same as the language of the exclusion in the instant case.

A Federal court interpreting Wisconsin law determined that sexual acts between adults and minors were so certain to result in harm to the minor that the law inferred intent to injure, notwithstanding the actor's subjective intent *(see, Whitt v Deleu,* 707 F Supp 1011 [US Dist Ct, WD Wis]). In discussing intent, the court quoted the Handbook on the Law of Torts (Prosser, § 8, at 31-32 [4th ed]), as follows: " '[I]t is an intent to bring about a result which will invade the interests of another in a way that the law will not sanction * * * Where a reasonable man in the defendant's position would believe that a particular result was substantially certain to follow, he will be dealt with * * * by the court, as if he intended it' " *(Whitt v Deleu, supra,* at 1014). The court also explained the majority rule, as follows: "The majority approach, followed by the Wisconsin Court of Appeals in *K.A.G.,* 434 N.W.2d 790, stands for the proposition that a person who sexually manipulates a minor cannot expect his insurer to cover his misconduct and cannot obtain such coverage simply by saying that he did not mean any harm. The courts following the majority approach have concluded that sexual misconduct with a minor is objectively so substantially certain to result in harm to the minor victim, that the perpetrator cannot be allowed to escape society's determination that he or she is expected to know that. Hence, these courts infer the intent to harm as a matter of law in sexual misconduct

liability insurance cases involving minors" *(Whitt v Deleu, supra,* at 1016; *see also, K.A.G. v Stanford,* 148 Wis 2d 158, 165, 434 NW2d 790, 793 ["(A)cts of sexual molestation against a minor are so certain to result in injury to that minor that the law will infer an intent to injure on behalf of the actor without regard to his or her claimed intent"]).

The Supreme Court of Georgia held that an insured who forcibly sexually molested a young girl for more than three years (from age 7 to 10) was presumed to have intended the resulting harm and, therefore, the acts were within the policy exclusions *(Roe v State Farm Fire & Cas. Co.,* 259 Ga 42, 376 SE2d 876). In *Roe,* as in this case, the insured's contention was that he did not intend to inflict the injury, a contention that was supported only by his testimony. The court rejected this contention, stating: "Child molestation and the injury caused by it are so closely tied as to be virtually inseparable. * * * We hold that intentional child molestation carries with it a presumption of intent to inflict injury. This presumption is not rebutted by the presentation of the insured's own self-serving testimony" *(Roe v State Farm Fire & Cas. Co., supra,* at 42, at 877). Strangely enough, despite the fact that all the parties herein moved for summary judgment in their favor, neither the Mugaveros nor the codefendants submitted any evidentiary proof in admissible form to contradict the deposition testimony of the children. Moreover, Edward Mugavero did not submit a sworn affidavit of his own.

In *Harpy v Nationwide Mut. Fire Ins. Co.* (76 Md App 474, 545 A2d 718), the Special Court of Appeals of Maryland noted that " 'for the law to define sex with one's nine to thirteen year old daughter to be anything but intentional injury is ridiculous' " *(Harpy v Nationwide Mut. Fire Ins. Co., supra,* at 482-483, at 722) and concluded that the insurance policy excluded coverage for injuries which the average person would expect or intend *(see, Harpy v Nationwide Mut. Fire Ins. Co., supra,* at 483, at 723).

In New Hampshire, the State's highest court has ruled that an insured's sexual assault upon a 12-year-old boy was not covered by the insured's homeowner's policy *(Vermont Mut. Ins. Co. v Malcolm,* 128 NH 521, 517 A2d 800). The court stated that the "insured's intentional act [cannot] be an accidental cause of injury when it is so inherently injurious that it cannot be performed without causing the resulting injury" *(supra,* at 524, at 802). The court further stated that the sexual assaults on the boy were so "inherently injurious in the most obvious sense that they could not be performed

* * * without appalling effects on his mind" *(Vermont Mut. Ins. Co. v Malcolm, supra,* at 524, at 802). Moreover, because the "psychological injury was * * * inherent in the acts alleged, the acts can not be treated as accidental causes, and the defendant's claim that he did not actually intend to inflict the particular psychological injury claimed is irrelevant" *(Vermont Mut. Ins. Co. v Malcolm, supra,* at 524, at 803).

Similarly, in *Public Employees Mut. Ins. Co. v Rash* (48 Wash App 701, 740 P2d 370), the court held that a sexual psychopath's inability to form any intent was irrelevant in an action resulting from the sexual molestation of the insured's nine-year-old stepson. The court in *Estate of Lehman v Metzger* (355 NW2d 425 [Minn]), found that the intentional act exclusion in a homeowner's policy relieved the insurer of its duty to defend in a case involving the insured's sexual assaults upon his minor niece. Notwithstanding the fact that a jury had rendered a verdict that the insured had not intended to inflict bodily harm upon the infant, the court inferred the intention to injure as a matter of law because of the nature of the act.

In fact, most jurisdictions confronted by this issue have held that the intentional commission of sexual acts, whether or not involving penetration, on minor children by an adult, although claimed to have been done without malice, falls within a homeowner's insurance policy's provision excluding coverage for intentionally caused bodily injury, thereby discharging the insurer's duty to defend. While many of these jurisdictions maintain a subjective intent standard of intent to injure, they impute the intent to injure as a matter of law.

In sum, the following States have adopted the majority rule and have inferred the intent to cause injury as a matter of law in insurance cases involving alleged sexual misconduct against minors: Arkansas, California, Florida, Georgia, Iowa, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Hampshire, Oklahoma, Pennsylvania, Washington, West Virginia and Wisconsin (the cases, most of which are listed in *Whitt v Deleu,* 707 F Supp 1011, 1014, n 4, *supra,* are as follows: *CNA Ins. Co. v McGinnis,* 282 Ark 90, 666 SW2d 689 [1984], *supra* [sexual abuse of minor stepdaughter by stepfather over 10-year period]; *American States Ins. Co. v Borbor,* 826 F2d 888 [9th Cir 1987] [applying Cal law to insured who molested nursery school children by undressing, touching and photographing them in various sexual poses]; *State Farm Fire & Cas. Co. v Huie,* 666 F Supp 1402 [US Dist Ct, ND Cal] [applying Cal law to rape of minor], *affd sub nom.*

*State Farm Fire & Cas. Co. v Bomke,* 849 F2d 1218 [9th Cir 1988]; *Fire Ins. Exch. v Abbott,* 204 Cal App 3d 1012, 251 Cal Rptr 620 [1988] [two cases; in one case insured fondled minor's thigh and caused her to touch insured's penis; in other case teacher had homosexual relationship with 14-year-old boy]; *Allstate Ins. Co. v Kim W.,* 160 Cal App 3d 326, 206 Cal Rptr 609, 613 [1984] ["lewd or lascivious acts" upon minor]; *State Farm Fire & Cas. Co. v Robin R.,* 216 Cal App 3d 132, 264 Cal Rptr 326 [1989] [oral intercourse with infant girls]; *McCullough v Central Fla. YMCA,* 523 So 2d 1208 [Fla] [fondling of genitals of three young boys]; *Landis v Allstate Ins. Co.,* 546 So 2d 1051, *supra* [sexual attacks on children]; *Roe v State Farm Fire & Cas. Co.,* 259 Ga 42, 376 SE2d 876, *supra* [molestation of minor daughter]; *Altena v United Fire & Cas. Co.,* 422 NW2d 485 [Iowa] [extends inference as matter of law to nonconsensual sexual acts with a 20-year-old adult]; *Perreault v Maine Bonding & Cas. Co.,* 568 A2d 1100 [Me] [sexual abuse of 6½-year-old girl]; *Harpy v Nationwide Mut. Fire Ins. Co.,* 76 Md App 474, 545 A2d 718, *supra* [sexual abuse of minor]; *Terrio v McDonough,* 16 Mass App 163, 450 NE2d 190 [sexual assault and battery upon adult]; *Allstate Ins. Co. v Hampton,* 173 Mich App 65, 433 NW2d 334 [sexual intercourse with 12 year old]; *Auto-Owners Ins. Co. v Gardipey,* 173 Mich App 711, 434 NW2d 220 [insured grabbed 10-year-old boy and put his penis in boy's mouth]; *Linebaugh v Berdish,* 144 Mich App 750, 376 NW2d 400, *supra* [sexual contacts, including penetration, inflicted on minor]; *Horace Mann Ins. Co. v Independent School Dist. No. 656,* 355 NW2d 413 [Minn] [sexual contacts inflicted on minor student by school teacher-counselor]; *Estate of Lehmann v Metzger,* 355 NW2d 425 [Minn], *supra* [sexual assaults upon minor by her adult uncle over four-year period]; *Fireman's Fund Ins. Co. v Hill,* 314 NW2d 834 [Minn] ["sexual play" with minor by foster parent]; *Illinois Farmers Ins. Co. v Judith G.,* 379 NW2d 638 [Minn] [various acts of sexual contact by minor with minor victims]; *Mutual Serv. Cas. Ins. Co. v Puhl,* 354 NW2d 900 [Minn] [homosexual assault upon minor]; *Vermont Mut. Ins. Co. v Malcolm,* 128 NH 521, 517 A2d 800, *supra* [sexual assaults on 11-year-old boy including fellatio and sodomy]; *Allstate Ins. Co. v Foster,* 693 F Supp 886 [US Dist Ct, D Nev] [sexual assaults]; *Allstate Ins. Co. v Thomas,* 684 F Supp 1056 [US Dist Ct, WD Okla] [criminally touching and molesting minor in lewd and lascivious manner]; *Foremost Ins. Co. v Weetman,* 726 F Supp 618 [US Dist Ct, WD Pa], *affd* 904 F2d 694 [sexual abuse by touching]; *Rodriguez v Williams,* 107 Wash 2d 381,

729 P2d 627 [sexual abuse of minor by stepfather]; *Public Employees Mut. Ins. Co. v Rash,* 48 Wash App 701, 740 P2d 370 [sexual molestation]; *Grange Ins. Assn. v Authier,* 45 Wash App 383, 725 P2d 642, 644 ["indecent liberties" taken with minors or touching them in a criminal manner]; *St. Michelle v Robinson,* 52 Wash App 309, 759 P2d 467 [father's sexual abuse of minor daughter]; *Horace Mann Ins. Co. v Leeber,* 376 SE2d 581 [W Va] [sexual contacts, such as touching of genitals, inflicted on minor student by school teacher]; *Farmers Ins. Co. v Hembree,* 54 Wash App 195, 773 P2d 105 [sexual assaults on minors]; *K.A.G. v Stanford,* 148 Wis 2d 158, 434 NW2d 790, *supra* [sexual abuse of six-year-old girl]; *N.N. v Moraine Mut. Ins. Co.,* 153 Wis 2d 84, 450 NW2d 445 [1990] [kissing and fondling of breasts and vaginal area]).

The particularly egregious nature of the acts involved herein and the gravity of the harm produced suggest that the courts of this State should also adopt the majority viewpoint. As stated by the court in *Foremost Ins. Co. v Weetman* (726 F Supp 618, 622, *supra):* "A person who sexually abuses a minor cannot expect his insurer to cover his misconduct and cannot escape personal liability by claiming that he did not intend to cause any harm. In situations such as this, injury always ensues, and we conclude that one who manipulates children for his own sexual gratification intends any resulting injuries, as a matter of law".

Accordingly, I vote to grant summary judgment to Allstate declaring that it has no obligation to defend Edward Mugavero in the underlying action. Moreover, since the injuries herein were "intentionally caused by an insured person", i.e., Edward Mugavero, within the meaning of the exclusionary provision of the homeowner's policy, it follows that Allstate also has no obligation to defend his wife, Ann Mugavero *(see, Allstate Ins. Co. v Gilbert,* 852 F2d 449; *Allstate Ins. Co. v Foster,* 693 F Supp 886). *[See,* 142 Misc 2d 361.]