**ALLSTATE INSURANCE COMPANY, an Illinois corporation, Plaintiff,**

v.

**Robert A. BROWNING, Christopher Mark Browning, Kathleen J. Browning, Raymond D. Richardson, and Shirley A. Richardson, Defendants.**

**Civ. No. 83–758.**

United States District Court, D. Oregon.

Aug. 12, 1983.

James M. Callahan, Landis, Aebi & Bailey, P.C., Portland, Or., for plaintiff.

Judy Danelle Snyder, Hoevet, Snyder & Van Duyn, P.C., Portland, Or., for defendants Browning.

Charles J. Merten, Karen L. Fink, Richard S. Yugler, Merten & Fink, Portland, Or., for defendants Richardson.

OPINION AND ORDER

FRYE, District Judge:

This matter is before the court on cross motions for summary judgment of plaintiff Allstate Insurance Co. (Allstate) and defendants Robert A. Browning, Christopher Mark Browning, and Kathleen J. Browning (Brownings). Allstate seeks a judgment in its favor on the issue of its liability for Christopher Browning's acts under the policy of insurance issued by Allstate to Christopher Browning's parents; Brownings

seek judgment on the limited issue of whether Allstate has a duty to defend Christopher Browning in the pending Clackamas County lawsuit. Defendants Raymond D. Richardson and Shirley A. Richardson (Richardsons) have filed a memorandum in opposition to Allstate's motion and in support of Brownings' motion.

## UNDISPUTED FACTS

In 1980 16-year-old Christopher Browning and two of his friends harassed the Richardsons, a black family living in Milwaukie, Oregon, by doing such things as burning a cross in their front yard and shouting racial epithets at them.[1] The Richardsons filed a civil rights suit in federal court against the three boys but later dismissed that suit and refiled in state court, partly in order to allege causes of action under which the boys' parents' homeowner's insurance policies would provide coverage. Richardsons filed a complaint in Clackamas County Circuit Court alleging causes of action for trespass, property damage, interference with the use and enjoyment of their property, and statutory liability of the parents. They alleged that though the boys' acts were intentional, the harm they caused the Richardsons was not intended. Richardsons also alleged one count of negligent interference with the use and enjoyment of their property. They alleged that as a result of the boys' acts their right of occupancy was invaded and injured; their use and enjoyment of their home was disrupted and interfered with; they suffered bodily injury in the form of severe mental and physical stress, trauma, pain, discomfort, and nervousness; they incurred medical expenses and lost business profits; and they incurred expenses in making their premises safe from further intrusions.

Allstate Insurance Company, which provided the homeowners' insurance policy for the parents of Christopher Browning, undertook his defense in the Clackamas County case. Christopher Browning is an insured person under the policy. The policy provides coverage for losses due to bodily injury or property damage which an insured person becomes obligated to pay. However, the policy excludes bodily injury or property damage intentionally caused by an insured person. The policy provides that when an insured person is sued for damages for any covered loss, Allstate will provide a defense, even if the allegations are not true. By letter dated December 18, 1981, Allstate reserved all of its rights and defenses under the policy, including the right "to later disclaim any obligation under the policy and to set up a defense of non-coverage under the policy," under the policy's exclusion of coverage for bodily injury or property damage intentionally caused by an insured.

Christopher Browning's deposition was taken in December, 1980. He testified as follows:

Q: Where did you get the idea for the cross?

A: Well, I had seen such things done on TV, and it was kind of just like a spur of the moment thing.

Q: Where on TV?

A: Like, it was on Roots, and I had seen it on several other shows that were dealing with the same kinds of things. It was like a form of retaliation for a black person.

Q: You mean, against a black person?

A: Yes.

Q: So, your idea was to retaliate?

A: Uh-huh.

Q: And why did you think it was a good idea?

A: It wasn't necessarily that it was a good idea. It was just an idea.

Q: Well, you wanted to retaliate; is that correct?

A: Yes, ma'am.

---

**1.** Other acts of harassment are alleged in the complaint and testified to by Christopher Browning in his deposition, such as breaking car and house windows, spray painting, and threatening the Richardsons' safety, but there is no evidence that Christopher Browning personally carried out these other acts.

Q: Why did you think burning a cross was a good way of doing that?

A: Because I felt that it was something that would symbolize to a black person ill feelings.

Deposition, pp. 55–56, Plaintiff's exhibit C. Christopher Browning also testified that he knew a black family lived in the house at the time of the cross-burning, though he didn't know until later that it was the Richardson family. He intended his acts as retaliation against a black youth who had thrown stones at him, although he had no information at the time that the youth lived with the Richardsons, and in fact he did not. Christopher Browning also testified that he had no racial hatred and did not know the emotional effect his acts would have on the Richardsons or on any other black person. In his affidavit filed in this action he states that he did not anticipate that the harm alleged in the Richardsons' complaint would result from his "pranks" and that he did not intend to harm the Richardsons in any manner.

## DISCUSSION

Allstate moves for summary judgment on the grounds that the harm to the Richardsons was caused intentionally by Christopher Browning, therefore liability is excluded under the policy's "intentionally caused" injury or damage exclusion. Brownings assert that there is a material issue of fact as to whether or not the harm was intentionally caused, therefore summary judgment cannot be granted. Brownings assert that under the undisputed facts Allstate is required to provide a defense. The Brownings seek partial summary judgment in their favor on this issue.

■ Oregon follows the rule that the harm itself, not just the act causing the harm, must have been intended in order for the clause excluding liability for intentionally caused injury or damage to apply. In *Snyder v. Nelson/Leatherby Ins.*, 278 Or. 409, 564 P.2d 681 (1977), the insured rammed plaintiff's car with his own, repeatedly, causing injury and property damage. The insurance policy excluded coverage for intentional acts. The court noted that in general it is against public policy for a tortfeasor to insure against liability for intentionally inflicted injury or damage, *Isenhart v. General Casualty Co.*, 233 Or. 49, 377 P.2d 26 (1962), but it concluded that in this case it was a permissible but not a necessary inference that the insured intended the normal and natural consequences of his acts; that therefore there was a legitimate question of fact as to whether he intended the injury and damages, and summary judgment was therefore inappropriate.

In *City of Burns v. Northwestern Mutual Ins. Co.*, 248 Or. 364, 434 P.2d 465 (1967), the insured wrongfully moved the grave of Mrs. Hovis's husband, causing her emotional injury. The court held that while the moving of the grave was an intentional act, the injury to the widow was not intended, therefore liability was not excluded by the policy. The court said:

The policy exclusion relates to *injury* caused intentionally. It is not sufficient that the insured's intentional, albeit wrongful, act has resulted in unintended harm; it is the harm itself that must be intended before the exclusion will apply. An act may be so certain to cause a particular kind of harm that it can be said that a person who did such an act intended the harm. However, we do not believe that moving a grave is such an act.

248 Or. at 369, 434 P.2d 465. (Emphasis in original). *See also, Nielsen v. St. Paul Cos.*, 283 Or. 277, 583 P.2d 545 (1978).

■ The present case, while similar to *Snyder, supra,* can be distinguished in that it is an undisputed fact that Christopher Browning intentionally set out to "retaliate" against a black youth and had ill feelings toward him as a black person. His were acts "so certain to cause a particular kind of harm that it can be said that [the] person who did such an act intended the harm." *City of Burns, supra.* It may well be that the harm he caused exceeded in *degree* that which he intended, but the kind of harm alleged by the Richardsons

was certain to follow from Christopher Browning's acts, and Christopher Browning knew it would follow, at least to some degree.

This court finds from the undisputed facts that Christopher Browning's acts were intentional and were intended to produce the kind of harm which resulted. The damage and injury resulting from these acts are therefore excluded from coverage under the insurance policy.

 Even though coverage is excluded under the policy, Allstate may still have a duty to defend the Brownings, if withdrawal would prejudice Brownings. *United Pacific Insurance v. Pacific Northwest Research Found.*, 39 Or.App. 873, 593 P.2d 1278 (1979). An insured may not, however, claim prejudice if the insurance company "*expressly* reserves the right to withdraw from the defense." *United Pacific, supra.* (Emphasis added) In its letter of December 18, 1981, Allstate reserved the "right to later disclaim any obligation under the policy and to set up a defense of non-coverage under the policy." Allstate argues that this broad language encompasses its right to withdraw from the defense. It is not, however, an *express* reservation of that right, and might not be understood as such by the insured. Therefore, this court must instead look at the facts to determine whether prejudice to Brownings would result from Allstate's withdrawal from the defense at this time.

Christopher Browning asserts in his affidavit that he has relied on Allstate to represent him in the Clackamas County lawsuit since December, 1981; that his personal attorney Judy Danelle Snyder has not been actively involved in the case since that time; and that he believes his defense would be prejudiced if Allstate were now permitted to withdraw. Allstate argues that no prejudice would result since Snyder represented Browning in the federal lawsuit and was present at his deposition. The trial of the underlying case is set for October 18, 1983. This court cannot determine whether the Brownings would be preju-

diced by having Allstate withdraw from his defense at this late date.

The Clerk shall forthwith set a hearing to allow the parties to present further evidence on this issue.