**ALLSTATE INSURANCE COMPANY, an Illinois corporation, Plaintiff,**

v.

**Jeanne SIMMS, personal representative of the Estate of Harold Simms, Jr., and Donald Zinn, Defendants.**

**Civ. No. 84–87–PA.**

United States District Court, D. Oregon.

Sept. 13, 1984.

Robert E. Maloney, Jr., Charles F. Hudson, Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland, Or., for plaintiff.

James M. Pippin, Pippin, Bocci & Shinn, Portland, Or., for defendant Jeanne Simms.

Daniel C. Lorenz, Des Connall, P.C., Portland, Or., for defendant Donald Zinn.

PANNER, Chief Judge.

Plaintiff seeks a declaration that its homeowners insurance policy does not provide insurance coverage for any claims arising out of the death of Harold Simms, Jr. (Simms). It has named as defendants both the personal representative of Harold Simms's estate, Jeanne Simms, and the insured, Donald Zinn (Zinn).

Defendants Jeanne Simms and Zinn are involved in a separate wrongful death action in the state circuit court. *Simms v. Zinn*, No. A8307–04394 (Multnomah County Cir.Ct. filed July 12, 1983). In that action both Jeanne Simms and Zinn contend that Zinn's homeowners insurance policy issued by Allstate covers the claims in question.

Allstate moves for summary judgment. Defendant Zinn filed a cross motion for summary judgment. I now grant Allstate's motion for summary judgment, and deny Zinn's motion for summary judgment.

## FACTS

The facts relevant to plaintiff's claim come from the transcript of defendant Zinn's criminal trial. They are not in dispute. Harold Simms, Jr., was shot and killed by Donald Zinn on January 1, 1982. Zinn was charged with the murder of Simms and with first degree manslaughter in the death of Charles Lewis. He was convicted of criminally negligent homicide in connection with the death of Simms.

At about 12:30 a.m. on the morning of the shooting, Zinn rested on his bed. He intended to pick up his fiancee after she finished bartending at 2:30 a.m. Zinn was awakened when someone turned on the bedroom overhead light. Zinn recognized Lewis, a former boyfriend of his fiancee, standing in the bedroom doorway. Lewis demanded to talk to Zinn. Zinn jumped from his bed, rushed to the bedroom closet, and grabbed a loaded rifle. As Zinn began to back out of the closet, he was held by Simms. After a brief discussion, Simms released Zinn and Zinn unloaded several cartridges onto the bed. Simms backed out of the bedroom and seated himself in the living room. As Zinn left the bedroom, he picked up the cartridges from the bed, pushed Lewis out of the bedroom and reloaded the rifle. As Lewis began to approach Zinn, Zinn pointed the rifle at Lewis, told him he was trespassing, and demanded that Lewis leave the house. Lewis continued to approach and Zinn repeated his demand. Zinn then shot Lewis. He then shot Simms as Simms was getting out of the chair. Simms advanced toward Zinn, and Zinn shot him a second time. Although Zinn could not recall shooting Simms more than twice, the coroner's report indicates that Simms was shot five times. Zinn testified that when he shot Simms he was aiming for the chest area.

## STANDARDS

■ Summary judgment is appropriate under Rule 56(c) if the court finds that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Securities and Exchange Commission v. Murphy*, 626 F.2d 633, 640 (9th Cir.1980). All reasonable doubts as to the existence of genuine issues must be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Where different ultimate inferences can be drawn, summary judgment is inappropriate. *Sankovich v.*

*Life Insurance Company of North America,* 638 F.2d 136, 140 (9th Cir.1981).

## DISCUSSION

■ Allstate contends that its homeowners insurance policy issued to Zinn does not provide coverage for any claim arising from Zinn's slaying of Simms. The insurance policy contains the following exclusion: "We do not cover bodily injury or property damage intentionally caused by an insured person." Complaint, Exhibit A at 18.

This court reviewed an identical exclusion clause in *Allstate Insurance Co. v. Browning,* 598 F.Supp. 421 (D.Or.1983) (Frye, J.). In reviewing the Oregon cases construing similar exclusion clauses, the court determined that both the act causing the harm, and the harm itself, must be intended in order for coverage to be excluded. *Id.* at 423.

In the present case, the evidence shows that Zinn intended to shoot Simms and intended to cause him bodily harm. In Zinn's prior criminal trial, he testified as follows:

Q. All right. What did you do at that moment?

A. Well, I thought—I just had a flash in my mind, "I'm in the last room of my house. I can't run anymore, because with all those locks on the doors, I would have to put the rifle down somewhere in the kitchen, and turn my back on the people [Simms and Lewis]," and I pulled the trigger.

Q. When you pulled the trigger what did you intend to happen?

A. For them to go down.

. . . .

Q. What did you—this is a big gun, this 45–70. Are you aware of its stopping power?

A. I have never shot an animal with it.

Q. But, you knew it was a buffalo gun?

A. Yes.

Q. When you fired this weapon, what did you expect to happen?

A. I expected him to drop.

Q. Did they drop?

A. No, they did not.

Q. What did you do?

A. They kept coming like I was shooting blanks.

Transcript at 34, 45.

In his affidavit submitted with his cross motion, Zinn states: "At no time during the transactions leading to the death of defendant Simms did I intend any wrongful or criminal behavior. I intended solely to exercise that degree of force which I honestly believed I was lawfully entitled to use in proper defense of myself." Zinn Affidavit at 2–3. As noted previously, Zinn testified that when he shot at Simms, he was aiming for the chest area.

Viewing the inferences from these facts in a light most favorable to defendants, there is no other inference to be drawn but that Zinn intended to shoot Simms and intended to cause Simms bodily harm, although he may not have intended to cause the death of Simms. Defendant Jeanne Simms has not submitted any evidence to controvert this conclusion.

Zinn contends that "the evidence indicates that Mr. Zinn had consumed vast quantities of alcohol and that this may have contributed in a substantial and material way to the events of January 1, 1984." Memorandum of Law at 3. There is no evidence in the record to support this conclusion. Zinn's testimony shows that some hours before the shooting, he drank part of a coffee cup of wine and spilled the rest. Transcript at 178. He later drank a half to three quarters of a brandy drink at a bar. Transcript at 181. Moreover he states in his affidavit that he consumed "some wine some hours before the shooting." Zinn Affidavit at 2.

I cannot conclude on the basis of this evidence that Zinn consumed "vast quantities" of alcohol prior to the shooting incident. Nor can I conclude from this evidence that Zinn's consumption of alcohol substantially influenced his behavior at the time of the shooting. It is clear that Zinn

intended to shoot Simms and that he intended to cause Simms bodily injury.

Defendants contend that Zinn's acts were not within the policy exclusion because Zinn was acting in self-defense when he shot Simms. In support of this argument Zinn cites *Brasseaux v. Girouard,* 269 So.2d 590 (La.Ct.App.1972). The *Brasseaux* court initially determined that even though the insured unreasonably believed that self-defense was necessary, and used excessive force in defending himself, the insured was covered by his insurance policy. *Id.* at 595. The court determined that the exclusion clause was ambiguous, and construed the clause against the insurer. On rehearing, however, the court concluded that it had erred in its original decision. It determined that where the insured shot the victim intentionally, and the shooting was unjustified, the exclusionary clause excluded coverage and relieved the insurer from liability. *Id.* at 600. The *Brasseaux* court was not presented with a situation where the insured was justifiably acting in self-defense.

California appears to follow the rule that where the insured causes injury while acting in self-defense, he is not precluded from coverage by an intentional injury exclusion. *Walters v. American Insurance Co.,* 185 Cal.App.2d 776, 8 Cal.Rptr. 665 (1960). The California rule is influenced by an interpretation of section 533 of the California Insurance Code. The *Walters* court determined that the intentional injury exclusion requires an element of wrongfulness or misconduct. 8 Cal.Rptr. at 670. *See Arenson v. National Automobile and Casualty Insurance Co.,* 45 Cal.2d 81, 286 P.2d 816, 818 (1955).

The majority of courts hold, however, that an intentional injury exclusion precludes coverage for intentional injuries caused by the insured, even where the insured is acting in self-defense. *Lockhart v. Allstate Insurance Co.,* 119 Ariz. 150, 579 P.2d 1120 (Ariz.Ct.App.1978); *Clemmons v. American States Insurance Co.,* 412 So.2d 906 (Fla.Dist.Ct.App.1982); *Hartford Accident and Indemnity Co. v. Krekeler,* 363 F.Supp. 354 (E.D.Mo.1973), *rev'd on the other grounds,* 491 F.2d 884 (8th Cir.1974).

In *Lockhart v. Allstate Insurance Co., supra,* the insurance company contended that its policy provided no coverage even if the insured was acting in self-defense at the time he allegedly shot the victim. The Arizona Court of Appeals held that the intentional injury exclusion precluded coverage. It provided the following rationale:

> The insurance policy excludes coverage for an intentional act of the insured which was intended to cause injury or which could be expected to cause injury. The question of self-defense presents an issue of motive or justification for an intentionally caused harm but does nothing to avoid the inference of intent to harm that necessarily follows [the insured's] deliberate shooting at [the victim]. *Home Insurance Company v. Neilson,* [165 Ind.App. 445, 332 N.E.2d 240 (1975)]. [The insured's] own statement demonstrates that he intended to shoot the gun and to cause injury. Whether he intended the precise injuries which occurred is immaterial. We are of the opinion that despite [the insured's] affidavit stating that he fired his gun only to protect himself and to prevent [the victim] from shooting at him, there is no factual issue as to his intent which would preclude summary judgment.

*Lockhart v. Allstate Insurance Co.,* 579 P.2d at 1122–23.

In *Clemmons v. American States Insurance Co.,* the insurance policy at issue excluded coverage of bodily injury either expected or intended from the standpoint of the insured. The court assumed the insured was acting in self-defense when he shot the victim. The court determined that the insured intentionally discharged a firearm while aiming it at the victim, and he intended and expected to inflict serious bodily injuries. The court reasoned that without regard to whether the insured's actions were justified under criminal law

**68**

concepts, he acted within the policy exclusion. *Id.* at 910.

I am persuaded by the *Lockhart* line of cases. I find that even if Zinn was acting in self-defense when he shot Simms, he is precluded from coverage by the intentional injury exclusion of his policy.

Although Allstate's insurance policy does not provide coverage for Zinn's slaying of Simms, under some circumstances there may be a duty to defend Zinn if withdrawal would prejudice Zinn. *United Pacific Insurance Co. v. Pacific Northwest Research Foundation*, 39 Or.App. 873, 593 P.2d 1278 (1979); *Allstate Insurance Co. v. Browning, supra*, at 424.

Allstate contends no such prejudice will occur. Records of the state court proceeding indicate that the case was reinstated on June 14, 1984, after a 30-day order of dismissal on May 23, 1984. Affidavit of Charles Hudson, Exhibit G. Allstate maintains that Zinn is represented by independent counsel in the state court proceedings. Zinn states that an answer has been filed on his behalf in the state court action. Zinn Affidavit at 2.

Under these circumstances, I find that Zinn will not be prejudiced by Allstate's withdrawal. A final determination of this issue, however, more appropriately rests with the presiding judge in the state court action.

### CONCLUSION

I find that the Allstate homeowners insurance policy issued to defendant Zinn does not provide coverage for claims arising from Zinn's intentional shooting of Simms. Allstate's motion for summary judgment is GRANTED. Although it appears that Zinn will not be prejudiced by Allstate's withdrawal from the state court action, I defer final decision on that issue to the presiding judge in the state court proceeding. Defendant Zinn's motion for summary judgment is DENIED.

IT IS SO ORDERED.