**STATE FARM FIRE & CASUALTY COMPANY, an Illinois corporation, Plaintiff,**

v.

**Thomas EZRIN, Jennifer Mason, Bryan Freedman, and Edmund Fisher, Defendants.**

**No. C 89–4575 RFP.**

United States District Court, N.D. California.

April 10, 1991.

Fred M. Feller, York, Buresh & Kaplan, Berkeley, Cal., for plaintiff.

Clark G. Leslie, Law Offices of Clark G. Leslie, San Mateo, Cal., William Ahern, Ahern, Mooney & Rodriguez, Castro Valley, Cal., for defendants.

## ORDER

PECKHAM, District Judge.

In this suit, State Farm Fire & Casualty Company ("State Farm") seeks a declaration that it has no duty to indemnify the insured, Thomas Ezrin, for damages arising from an alleged sexual assault. In its motion for summary judgment, State Farm contends that Ezrin's conduct was intentional and thus excluded by the terms of the policy and by California Insurance Code § 533. For the reasons outlined below, State Farm's motion for summary judgment is granted.

## I. BACKGROUND

This litigation arises out of events that occurred on the night and early morning of October 4–5, 1985. That night, Jennifer Mason, a seventeen-year-old high school student, had attended a party given by the Tau Kappa Epsilon fraternity at the University of California. She was given alcoholic punch and became drunk. After leaving the party, Mason became lost on the streets of Berkeley. She then encountered two university students, Thomas Ezrin and Bryan Freedman. Ezrin and Freedman offered to help Mason and asked her to accompany them to their fraternity, Zeta Beta Tau. Once inside, it is alleged by Mason that she was sexually assaulted and battered by Ezrin, Freedman, and Edmund Fisher, another member of the fraternity.

On April 15, 1986, Mason and her parents filed a complaint against Ezrin and others in the Superior Court for Alameda County based on the above-described incident. After a second amendment was filed on December 30, 1987, the complaint alleged that Ezrin and others assaulted and battered and sexually assaulted and battered Mason against her will. The complaint also alleged that defendants' conduct was done with intent to cause or with reckless disregard of the probability of causing emotional distress to her and her parents. Finally, the complaint alleged that defendants had breached their duty of care to Mason to provide a safe premises.

At the time of the incident, Ezrin was an insured under the terms of his parents' State Farm homeowners' insurance policy. Pursuant to the provisions of the policy, State Farm agreed to pay for Ezrin's defense in the underlying California Superior Court action, but reserved the right to deny coverage for Ezrin's acts on the ground that coverage is precluded by the terms of the policy and by state law.

State Farm brings this action for a declaration that it is not liable to indemnify Ezrin for any losses sustained in connection with the October 5, 1985 incident. To date, Ezrin has not made any claim against State Farm for coverage.

## II. DISCUSSION [1]

We are presented with issues concerning the interpretation of an exclusionary clause of an insurance contract and of California Insurance Code section 533. The insurance policy, in relevant part, provides:

COVERAGE L—PERSONAL LIABILITY

If a claim is made or a suit brought against an *insured* for damages because of *bodily injury* or *property damage* to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the *insured* is legally liable;

\* \* \* \* \* \*

Coverage L and M do not apply to:

a. *bodily injury* or *property damage* which is expected or intended by an insured....

The interpretation of the terms of an insurance policy, like other contracts, presents a question of law for the court. *Parsons v. Bristol Development Co.*, 62 Cal.2d 861, 44 Cal.Rptr. 767, 402 P.2d 839 (1965).

Section 533 provides:

An insurer is not liable for a loss caused by the willful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others.

This clause applies to all insurance contracts in California and is "equivalent to an exclusionary clause in the contract itself." *Morton v. Safeco Ins. Co.*, 905 F.2d 1208, 1210 (9th Cir.1990) (quoting *Evans v. Pacific Indemnity Co.*, 49 Cal.App.3d 537, 540, 122 Cal.Rptr. 680 (1975)). Although there is some dispute as to whether the policy exclusion and section 533 are coextensive, *compare James M. v. Sebesten*, 221 Cal. App.3d 451, 270 Cal.Rptr. 99, 105 (1990) (section 533 is broader than policy exclusion) *with State Farm Fire & Cas. Co. v. Estate of Jenner*, 874 F.2d 604, 606 (9th Cir.1989) (section 533 and policy exclusion

---

**1.** Only Jennifer Mason has filed a brief in opposition to State Farm's motion for summary judgment. For purposes of clarity, we shall refer to her as "Mason" or "defendant".

are identical), it is agreed that the two exclusions both exclude coverage for certain types of intentional acts. *Morton v. Safeco Ins. Co.,* 905 F.2d 1208, 1210–11 (9th Cir.1990).

The precise contours of the exclusion for intentional and willful acts are hotly disputed by the parties. Defendant contends that to exclude coverage, State Farm must prove not only that Ezrin intended his actions, but that he acted with a "preconceived design to inflict injury." Def's Mem. at 3 (quoting *Clemmer v. Hartford Ins. Co.,* 22 Cal.3d 865, 887, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978)). State Farm, in turn, argues that it need not demonstrate a preconceived design because, in a case of sexual assault, we may infer a "specific intent to injure as a matter of law." Pl's Mem. at 8 (quoting *Fire Ins. Exch. v. Abbott,* 204 Cal.App.3d 1012, 1026, 251 Cal. Rptr. 620 (1988)).

### A. *The Specific Intent to Injure*

The California Supreme Court first addressed the meaning of the term "willful" in *Clemmer v. Hartford Ins. Co.,* 22 Cal.3d 865, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978). In that case, the Court appeared to describe the test for willfulness as having two components:

> even an act which is 'intentional' or 'willful' within the meaning of traditional tort principles will not exonerate the insurer from liability under Insurance Code section 533 unless it is done with a preconceived design to inflict injury.

*Id.* at 887, 151 Cal.Rptr. 285, 587 P.2d 1098. Subsequent appellate court decisions focused on whether the insurer had shown—in addition to an intent to perform the act—the existence of a preconceived design to inflict injury. *E.g., California Shoppers, Inc. v. Royal Globe Ins. Co.,* 175 Cal.App.3d 1, 221 Cal.Rptr. 171 (1985). In short, the courts had held that the test for willfulness consisted of two co-equal elements: the intent to perform the act and the intent to inflict injury.

In *J.C. Penney Casualty Ins. Co. v. M.K.,* 52 Cal.3d 1009, 278 Cal.Rptr. 64, 804 P.2d 689 (1991), the Supreme Court retreat-ed from the two-pronged test. *J.C. Penney* arose from the sexual molestation of a five-year-old girl by the insured. In the main action, the mother and child filed a suit for damages against the insured based on theories of negligence and negligent infliction of emotional distress. *Id.* at 1015, 278 Cal.Rptr. 64, 804 P.2d 689. The insurance company, J.C. Penney, then sought a declaration that it had no duty to indemnify the insured because child molestation was a willful act as a matter of law within the meaning of section 533. *Id.* at 1016, 278 Cal.Rptr. 64, 804 P.2d 689. The trial court agreed that sexual molestation was excludable as a matter of law. *Id.* The Court of Appeal, however, relied on the language in *Clemmer* that the insurer had to show a "preconceived design to inflict injury" and thus reversed the trial court. The appellate court would have permitted the introduction of the insured's psychiatric evidence that the molestation was a "misguided show of affection," and thus held that an issue of fact had been raised as to the insured's intent to injure. *Id.* 52 Cal.3d at 1017, 278 Cal.Rptr. 64, 804 P.2d 689. The Supreme Court reversed, holding that sexual molestation was a "willful" act as a matter of law.

The Court discussed extensively the insured's argument that "the intent to molest is not enough … the insurer [must also] show that the molester had a 'preconceived design to inflict injury' on the child." *Id.* at 1023, 278 Cal.Rptr. 64, 804 P.2d 689. Although the Court acknowledged the language from *Clemmer,* it emphasized that the inquiry in that case had been limited to "the unresolved mental capacity of the insured," and that there was "no holding by the Supreme Court in *Clemmer* that intent to injure, standing alone, was a dispositive issue." *Id.* (quoting *J.C. Penney Casualty Ins. Co. v. M.K.,* 220 Cal.App.3d 484, 257 Cal.Rptr. 801, 811 (App.1989) (Nares, J., dissenting). Instead, the issue of a "preconceived design" was intended to encompass only the "insured's mental capacity to commit the wrongful act." 52 Cal.3d at 1023, 278 Cal.Rptr. 64, 804 P.2d 689.

The *J.C. Penney* Court thus shifted the inquiry from the insured's subjective intent to injure to the wrongfulness of the act. Following *J.C. Penney*, it is no longer necessary to analyze the subjective intent of the insured where the act is itself wrongful. Consequently, to prevail, State Farm must show that Ezrin intentionally committed a wrongful act.

## B. *The Wrongfulness of the Act*

Resolution of this case turns on the inherent wrongfulness of the acts alleged in Mason's complaint. In the case of child molestation, the inquiry is quite simple.

> Because the wrongful act of child molestation is itself the *harm*, section 533 does not require a showing of the insured's subjective intent to harm. Likewise, *Clemmer* does not require a showing by the insurer of its insured's 'preconceived design to inflict harm' when the insured seeks coverage for an intentional and wrongful act if the harm is inherent in the act itself. Section 533 precludes coverage in this case because child molestation is *always* intentional, it is *always* wrongful, and it is *always* harmful.

*Id.* 52 Cal.3d at 1025, 278 Cal.Rptr. 64, 804 P.2d 689. However, *J.C. Penney*—and the cases on which it relied—address only the question of sexual activity with children under the age of 14. *Id.* at 1025–26, 278 Cal.Rptr. 64, 804 P.2d 689. In these cases, the courts have emphasized the special concerns posed by sexual abuse of such young children and remarked on the Legislature's particular focus on children of that age. *See, e.g.,* California Penal Code § 288 (prohibiting lewd and lascivious acts with children under 14). Although Mason was still a minor, *see* California Penal Code § 261.5 (defining the maximum age for statutory rape as 18), the context of this incident distinguishes this case from the child molestation cases. Most importantly, it appears, on these facts, that Ezrin could assert a defense that he mistakenly believed that Mason was an adult. *People v. Massey,* 192 Cal.App.3d 819, 237 Cal.Rptr. 734 (1987) (noting that for statutory rape, unlike child molestation, mistake of age is a valid defense). Because these facts more closely resemble sexual conduct with an adult, we cannot say that this case is controlled by *J.C. Penney,* 52 Cal.3d at 1028, 278 Cal.Rptr. 64, 804 P.2d 689 (stating that the "only wrongdoing we address is the sexual molestation of a child").

Mason's complaint in the underlying state tort action alleges that Ezrin "assaulted and battered and sexually assaulted and battered plaintiff Jennifer Mason ... against plaintiff's will"; that Ezrin knew or should have known that he was causing plaintiff to suffer emotional distress; and, that he acted in reckless disregard of the probability of causing emotional distress to Mason's parents. *See* Second Amended Complaint. In short, the complaint seeks damages arising from non-consensual sexual assault.[2] The question then becomes whether the act of non-consensual sexual assault is itself wrongful such that coverage is unavailable as a matter of law. We believe that it is.

The trauma of sexual abuse is not limited to children. For both children and adults, the experience can leave lasting emotional scars and depression long after the event has passed. Indeed, assuming the truth of her complaint, Mason and her parents continue to consult physicians and psychologists to help cope with the pain and humiliation of these events. Sexual battery is also distinguishable from other types of battery because it may never be justified by a claim of self-defense. As with child molestation, the unwanted touching is *itself* the harm. We can think of no logical basis for applying different rules of coverage for non-consensual acts performed with adults.

---

2. "Non-consensual" is the operative term in a claim for sexual assault and battery. Because consent would void Mason's claim, the issue of insurance coverage would never arise. *Cynthia M. v. Rodney E.,* 228 Cal.App.3d 1040, 279 Cal. Rptr. 94 (1991) (noting that consent is viable defense to civil action based on intercourse with a minor); *Altena v. United Fire & Cas. Co.,* 422 N.W.2d 485, 489 (Iowa 1988) (noting that consent would preclude recovery arising from sexual battery). *Cf. J.C. Penney,* 52 Cal.3d at 1026, 278 Cal.Rptr. 64, 804 P.2d 689 (recognizing that a claim of self-defense would justify a battery and thus moot the question of insurance).

Although the California Supreme Court has not yet considered the question of coverage for non-consensual sexual acts with adults, other state courts have repeatedly held that there can be no distinction between adult and child victims for purposes of determining liability insurance coverage.[3] In *Altena v. United Fire & Cas. Co.*, 422 N.W.2d 485 (Iowa 1988), the Iowa Supreme Court considered whether the insured's non-consensual sexual acts with a twenty-year old college student fell within the policy coverage. The insurance policy—like the insurance policy in this case—excluded coverage for bodily injury "which is expected or intended by the insured." *Id.* at 486. And Iowa—like California—accepts the majority view that the wrongfulness of an act may, in some cases, be inferred as a matter of law. *Id.* at 488 (citing *Allstate Ins. Co. v. Kim W.*, 160 Cal.App.3d 326, 206 Cal.Rptr. 609 (1984)). Having considered both the policy itself and the public policy of the state, the Court held that the fact that the victim was an adult was of no consequence in determining insurance coverage. *Id.* at 489–90.[4] *Altena* followed the Minnesota Supreme Court's decision in *State Farm Fire & Cas. Co. v. Williams*, 355 N.W.2d 421 (Minn. 1984). In *Williams*, the main action alleged assault and battery and infliction of emotional distress arising from non-consensual acts performed upon an adult in a wheelchair. The policy at issue was identical to that in the instant case. The Court held that the intentional act of non-consensual assault was excluded from coverage whether the victim was a child or an adult. *Id.* at 425.[5] *See also Western Nat'l Assurance Co. v. Hecker*, 43 Wash.App. 816, 719 P.2d 954 (1986) (denying coverage for non-

consensual anal intercourse with adult)[6]; *Terrio v. McDonough*, 16 Mass.App.Ct. 163, 450 N.E.2d 190 (1983) (denying coverage for claim of sexual assault and battery).

In only one case that we have found did the court decline to deny coverage as a matter of law. *New York Central Mut. Fire Ins. Co. v. Heidelmark*, 108 A.D.2d 1093, 485 N.Y.S.2d 661 (1985) (finding duty to defend claim of sexual assault). New York law, however, is wholly unlike California's. In New York, the courts have rejected the majority view—and the view adopted by the California Supreme Court in *J.C. Penney*—that the inference of intent to harm may be found as a matter of law in child molestation cases. *Allstate Ins. Co. v. Mugavero*, App.Div., 561 N.Y.S.2d 35 (1990); *id.* at 43, 46 (Balletta, J., dissenting) (noting that New York conflicts with "[a]lmost every state that has addressed the question," including California). The *Heidelmark* opinion thus is not persuasive, although it is interesting to note that New York has chosen—as we do here—to treat child and adult victims of sexual abuse in the same fashion. *Mugavero*, 561 N.Y.S.2d at 36.

Finally, we find support for our decision in *Merced Mut. Ins. Co. v. Mendez*, 213 Cal.App.3d 41, 261 Cal.Rptr. 273 (1989). In the underlying action, the adult victim had alleged intentional and negligent assault and battery arising from forced oral copulation with a fellow employee. The insured argued, as does the insured here, that coverage exists "even if the acts causing the alleged damage were intentional as long as the resulting damage was not intended."

---

**3.** For several reasons, we find decisions from other jurisdictions to be persuasive. *First,* the *J.C. Penney* Court referred to such decisions as proof that California "is in the mainstream on this issue." 52 Cal.3d at 1027, 278 Cal.Rptr. 64, 804 P.2d 689. *Second,* California Insurance Code section 533 is viewed by other jurisdictions as merely codifying an "obvious and well-established principle[ ] of insurance law." *Allstate Ins. Co. v. Freeman*, 432 Mich. 656, 443 N.W.2d 734, 753–54 (1989). *Third,* these states cite California cases with some frequency and, consequently, are often cited by California courts. *Finally,* the insurance policies at issue

are often identical to the policies construed in California cases.

**4.** *Altena* was cited approvingly in *Fire Ins. Exchange v. Abbott*, 204 Cal.App.3d 1012, 251 Cal. Rptr. 620, 628 (1988).

**5.** *Williams* was cited approvingly in *State Farm Fire & Cas. Co. v. Bomke*, 849 F.2d 1218, 1220 (9th Cir.1988).

**6.** *Hecker* was cited approvingly in *Bomke*, 849 F.2d at 1220, and in *Morton*, 905 F.2d at 1211.

*Id.* at 48, 261 Cal.Rptr. 273. Although the opinion dealt only with the construction of the terms "occurrence" and "accident" in the policy and not with section 533, *id.* at 47 n. 2, 261 Cal.Rptr. 273, the court did soundly reject the argument.

In the present case, Mendez admits intentionally engaging in sexual activity with Ms. Perry. This sexual activity, which Ms. Perry alleges occurred against her will, forms the basis of her action against Mendez. All of the acts, the manner in which they were done, and the objective accomplished occurred exactly as appellant intended. No additional, unexpected, or unforeseen act occurred.

*Id.* at 50, 261 Cal.Rptr. 273. Similarly, Ezrin admits intentionally engaging in sexual activity with Mason. If, as Mason contends, she participated against her will, then Ezrin's acts were willful and intentional within the meaning of the policy exclusion and section 533.[7]

### III. CONCLUSION

We hold that non-consensual sexual assault is a wrongful act that is precluded by coverage by California Insurance Code section 533. Because State Farm is not liable if plaintiff's complaint is true—and Ezrin is not liable if it is not—State Farm has no duty to indemnify Ezrin for any damages arising out of the October 5, 1985 incident. State Farm's motion for summary judgment is granted.

IT IS SO ORDERED.

---

**7.** Because Mason's complaint is based on sexual assault, we need not decide whether coverage should be excluded simply because Ezrin violated California Penal Code § 261.5 (statutory rape). At least one state, though, has held that the intent to injure applies as well to consensual statutory rape. *Linebaugh v. Berdish,* 144 Mich. App. 750, 376 N.W.2d 400 (1985) (holding that the intent to harm may be inferred as a matter of law from a sexual act with an underage person).