**ALLSTATE INSURANCE COMPANY, Plaintiff,**

v.

**Frank TANKOVICH, James AHL, Deborah Ahl and Victoria Ahl, a minor, by and through her guardian, ad litem, James Ahl, Defendants.**

**No. C–91–0436 RFP(ENE).**

United States District Court, N.D. California.

Oct. 3, 1991.

Paul E.B. Glad, Jack D. Eskridge, Sonnenschien, Nath & Rosenthal, San Francisco, Cal., for plaintiff.

William H. Bachrach, A Professional Corporation, Oakland, Cal., for defendants.

## ORDER

PECKHAM, District Judge.

### INTRODUCTION

We are presented with concurrent motions for summary judgment and application for default judgment by plaintiff Allstate Insurance Company ("Allstate"). The defendants in this action are Frank Tankovich, an Allstate Homeowner's Policy holder, and the Ahls, who have received a civil judgment in State Court against *Mr.*

Tankovich for injuries caused by his racially motivated hate crimes. The Ahls claim that Mr. Tankovich's homeowners insurance policy should be used to satisfy their judgment. Allstate seeks a declaration that it owes neither a duty to defend nor indemnify the insured, Mr. Tankovich, for any losses suffered by the Ahls. In addition, Allstate seeks a default judgment against Mr. Tankovich who has failed to appear in this action.

## BACKGROUND

This case is the product of a series of tragic events. Defendant Frank Tankovich and defendants James Ahl, his wife, Deborah Ahl, and his daughter, Victoria Ahl (the "Ahls"), were next door neighbors in Concord, California for a period of several months. The Ahls rented their house and Mr. Tankovich owned his house. The Ahls were victims of hate crimes perpetrated by Mr. Tankovich which forced them to change residences. Mr. Tankovich's alleged misconduct includes:

- telephoning the Ahls' landlord and leaving racially offensive and threatening messages on his answering machine;
- making loud offensive racial comments so that Deborah Ahl would overhear such comments;
- sending a dog owned by Mr. Tankovich to chase Victoria Ahl, a child, and Deborah Ahl, her mother;
- driving Mr. Tankovich's truck onto the Ahls' front lawn and banging on the Ahls' door threatening to kill them;
- throwing firecrackers onto the back lawn of the Ahls' house; and
- spray painting racially offensive words on the front of the home after the Ahls had vacated it.

In March, 1990, Mr. Tankovich pleaded "no contest" and was found guilty on charges of violating various sections of the California Penal Code as a result of the misconduct alleged above, including:

- section 422.6(b) (applying to persons "who knowingly deface ... [property] ... for the purpose of intimidating or interfering [with another person's ex-

ercise of rights] ... because of the other person's race ...");
- section 594 (prescribing penalties for a person who "maliciously ... defaces with paint ..."); and
- section 653M(a) (prescribing penalties for a person who "with intent to annoy telephones another and addresses ... any threat to inflict injury to the person or property of the person ...").

In May, 1990, the Ahls filed their second amended complaint suing Mr. Tankovich for damages resulting from his misconduct. In deposition, Mr. Tankovich admitted to telephoning the Ahls' landlord and leaving racially offensive and threatening messages on his answering machine, driving his truck onto the Ahls' lawn and threatening them, and spray painting racially offensive words on the Ahls' house. On September 25, 1990, following a civil trial, the Superior Court, Contra Costa County, entered judgment in favor of the Ahls and against Mr. Tankovich in the amount of $159,032.71, including $48,400 in actual damages, $80,000 in civil penalties for violations of civil rights, $16,800 in damages resulting from trebling, $12,600 in attorney's fees and $1,232.71 in costs.

On February 13, 1991, Allstate filed this action. Allstate seeks a declaratory judgment stating that Allstate has no duty to defend or indemnify Mr. Tankovich. Allstate now moves to have this issue resolved by summary judgment. Since Mr. Tankovich has failed to appear in this action, Allstate moves for an application for default judgment against him.

## DISCUSSION

I. *Plaintiff Allstate's Motion for Summary Judgment for Declaratory Relief*

Allstate supports its motion on the grounds that Mr. Tankovich's homeowners policy only covers injury resulting from accidents and his purposeful conduct was not an accident. Also, Allstate alleges that coverage for such conduct is barred by the policy's intentional acts exclusion and is prohibited by Section 533 of the California

Insurance Code. In addition, they allege that coverage for such conduct is barred by the policy's criminal acts exclusion and is prohibited by Section 1668 of the California Civil Code. First, this order will discuss the summary judgment standard.

## A. *Summary Judgment Standard*

The Federal Rules of Civil Procedure provides for the granting of summary judgment where there is no genuine issue as to any material fact and where the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The burden of establishing that there is no genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). However, once the moving party has met that burden by presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial, the burden shifts to the non-moving party to present specific facts showing that such contradiction is possible. *British Airways Board v. Boeing Co.*, 585 F.2d 946, 950–52 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).

A party opposing summary judgment may not rest upon the mere allegations or denials included in the pleadings. Rather, responses, either by affidavit or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial. A mere "scintilla" of evidence supporting the non-moving party's position will not suffice. There must be enough of a showing that the jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

The question is whether reasonable minds could differ as to the import of the evidence. *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1288 (9th Cir.1987). "If the evidence is merely colorable ... or is not significantly probative, summary judgment may be granted." *Id.* at 1288 (citing *Anderson*, 106 S.Ct. at 2512). The non-moving party's evidence is to be taken as true and all inferences are to be drawn in the light most favorable to the non-moving party. *Eisenberg*, 815 F.2d at 1289.

■ The coverage under a written insurance policy is solely a matter for judicial interpretation. *Merced Mutual Ins. Co. v. Mendez*, 213 Cal.App.3d 41, 45, 261 Cal. Rptr. 273 (1989). Therefore, when a court finds that a policy does not provide coverage in a particular situation, summary judgment should be granted in favor of the insurer. *American Empire Surplus Lines Ins. Co. v. Bay Area Cab Lease, Inc.*, 756 F.Supp. 1287, 1289 (N.D.Cal.1991). Based on this memorandum, it appears that Mr. Tankovich's homeowner's policy does not provide coverage for bodily injury or property damage caused by his acts of racial hatred. Therefore, Allstate's summary judgment motion should be granted.

## B. *Whether Mr. Tankovich's Racial Harassment Activities Constitute an Accident Under the Insurance Policy*

■ The Allstate Homeowner's Policy covers only those liabilities for bodily injury and property damage *"arising from an accident"* (emphasis added). Mr. Tankovich's racial harassment activities cannot be construed to constitute an "accident" for purposes of coverage under the insurance policy.

The Ahls do not deny that each of Mr. Tankovich's acts—leaving racially offensive and threatening telephone messages, driving on their lawn, and spray painting their house—was purposeful conduct. However, they claim that these acts are accidental because Mr. Tankovich did not intend to injure the Ahls. Such purposeful conduct, despite the lack of a subjective intent to cause injury, cannot be deemed accidental.

The California Supreme Court has defined the term "accident" as it appears in a liability policy to mean "an unexpected, unforeseen, undesigned happening or consequence from either a known or unknown cause." *Hogan v. Midland Nat'l Ins. Co.*, 3 Cal.3d 553, 559, 91 Cal.Rptr. 153, 476 P.2d 825 (1970). Since *Hogan* explained

that if "conduct [is] calculated and deliberate, [then] *no accident* occurred" (emphasis in original), *Id.* at 560, 91 Cal.Rptr. 153, 476 P.2d 825, the Ahls' cannot claim that Mr. Tankovich's misconduct was an accident because the resulting injury was unintended.

The court in, *Merced Mutual Ins. Co. v. Mendez,* 213 Cal.App.3d 41, 261 Cal.Rptr. 273 (1989), stated that "where the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an 'accident' merely because the insured did not intend to cause injury." *Id.* at 50, 261 Cal.Rptr. 273. Although *Merced Mutual* involved child molestation, Mr. Tankovich's acts of racial harassment were similar in that "[a]ll of the acts, the manner in which they were done, and the objective accomplished occurred exactly as [the insured] intended. No additional, unexpected, independent, or unforeseen act occurred." *Id.*

Since there is no claim that Mr. Tankovich did not intend each of his acts which resulted in the Ahls' injuries, the Ahls cannot establish that his purposeful conduct was accidental. The burden of proving that the underlying action alleges an "accident" rests with the party seeking coverage, the Ahls, and not the insured, Allstate. *Zuckerman v. Underwriters at Lloyds,* 42 Cal.2d 460, 474, 267 P.2d 777 (1954).

C.  *Whether Mr. Tankovich's Misconduct is Excluded from Coverage by the Intentional Act Exclusion or is Precluded From Coverage by California Insurance Code Section 533*

■ Mr. Tankovich's misconduct is excluded from coverage by the intentional act exclusion and is precluded from coverage by California Insurance Code Section 533 ("Section 533"). The intentional act exclusion and Section 533 will be considered together because Section 533 is "an implied exclusionary clause which by statute is to be read into all insurance policies." *United States Fid. & Guar. Co. v. American Employer's Ins. Co.,* 159 Cal.App.3d 277, 284, 205 Cal.Rptr. 460 (1984).

Allstate's Homeowner's Policy "do[es] not cover bodily injury or property damage resulting from ... [a]n act ... *intended or expected to cause bodily injury or property damage* ... even if the bodily injury or property damage is of a *different kind or degree,* or is sustained by a different person or property, than that intended or expected (emphasis added)." Section 533 provides that "[a]n insurer is not liable for a loss caused by the *wilful act of the insured*" (emphasis added). Cal.Ins.Code § 533 (West Supp.1991).

The plain meanings of the intentional act exclusion and Section 533 are not apparent from their text alone. Allstate and the Ahls rely on different case law to support their positions.

Defendants Ahls rely on the California Supreme Court case which first addressed the meaning of the term "willful," *Clemmer v. Hartford Ins. Co.,* 22 Cal.3d 865, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978). *Clemmer* and subsequent cases held that the test for willfulness consisted of two co-equal elements: 1) the intent to perform the act; and 2) the intent to inflict injury. *State Farm Fire & Casualty Co. v. Ezrin,* 764 F.Supp. 153, 155 (1991). Defendants allege that Mr. Tankovich did not intend to injure the Ahls although he did intend to perform each of the acts which caused injury to the Ahls.

Plaintiff Allstate relies on the recent California Supreme Court ruling in *J.C. Penney Cas. Ins. Co. v. M.K.,* 52 Cal.3d 1009, 278 Cal.Rptr. 64, 804 P.2d 689 (1991), which excluded from coverage of a homeowners policy the insured's act of child molestation. In *J.C. Penney,* the Court held that the *Clemmer* test was not applicable here since "the wrongful act of child molestation is itself the *harm,* section 533 does not require a showing of the insured's subjective intent to harm" (emphasis in original). *Id.* 278 Cal.Rptr. at 73, 804 P.2d 689. Allstate claims that, like child molestation, Mr. Tankovich's racially motivated hate crimes are themselves the harms and, therefore, no showing of his subjective intent to harm the Ahls is required.

*J.C. Penney* was extended to a harmful act other than child molestation in *State Farm Casualty Co. v. Ezrin,* 764 F.Supp. 153 (N.D.Cal.1991), decided by this court. In *Ezrin,* this court held "that non-consensual sexual assault is a wrongful act that is precluded by coverage by California Insurance Code section 533." *Id.* at 158. The court found that the physical and emotional injuries caused by non-consensual sex were so similar to those caused by child molestation that there is "no logical basis for applying different rules of coverage." *Id.* at 156.

Given the analysis in *J.C. Penney,* it would appear that racially motivated hate crimes are themselves the harm. In *J.C. Penney,* the court found that "child molestation is *always* intentional, it is *always* wrongful, and it is *always* harmful" (emphasis in original). *J.C. Penney,* 278 Cal. Rptr. at 73, 804 P.2d 689. The court went on to note that:

> By admitting that [a defendant] intended to arouse, appeal to, or gratify sexual desire with a child, a molester necessarily *admits that he intended to harm the child.* 'Implicit in the [Legislature's] determination that children must be protected from such acts is a determination that *at least some harm is inherent in and inevitably results from those acts.'* ... Child molestation is not the kind of act that results in emotional and psychological harm only occasionally (emphasis added).

*Id.,* quoting *Allstate Ins. Co. v. Kim W.,* 160 Cal.App.3d 326, 206 Cal.Rptr. 609 (1984). Although no cases appear to exist which interpret Section 533 as it relates to racial hate crimes, such conduct appears to involve harm that is inherent and an inevitable result of such acts.

The District Court of Oregon applying Oregon law held that injuries were "certain to follow" from acts of racial hate which were similar to Mr. Tankovich's misconduct. *Allstate Ins. Co. v. Browning,* 598 F.Supp. 421, 424 (D.C.Ore.1983). In *Browning,* the insured's son harassed a black family by "burning a cross in their front yard and shouting racial epithets at

them." *Id.* at 422. The insured's son testified that, despite his acts, he harbored no racial hate and was unaware that his acts would cause emotional distress to the people living in the house. The insured's son also asserted that he did not intend to harm the black family in any manner. *Id.* Mr. Tankovich's acts of leaving racially offensive and threatening telephone messages, spray painting racially offensive words, and driving his truck onto the lawn and shouting threats of violence are just as disturbing as the acts in *Browning.*

Based on *J.C. Penney* and *Browning,* it appears that injury is either inherently or certain to follow from Mr. Tankovich's acts of racial hatred. Therefore, coverage should be excluded based on both the intentional acts exclusion of the policy and Section 533 of the California Insurance Code.

**D.** *Whether Mr. Tankovich's Misconduct is Excluded from Coverage by the Criminal Act Exclusion or is Precluded From Coverage by California Civil Code Section 1668*

■ Mr. Tankovich's misconduct is excluded from coverage by the criminal act exclusion and is precluded from coverage by California Civil Code Section 1668 ("Section 1668"). The criminal act exclusion and Section 1668 will be considered together because Section 1668 is "implied by law as an integral part of an insurance policy." *State Farm Fire & Cas. Co. v. Robin R.,* 227 Cal.App.3d 190, 196, 264 Cal.Rptr. 326 (1989).

Allstate's Homeowner's Policy "do[es] *not* cover bodily injury or property damage resulting from ... [a] *criminal act....* This exclusion applies regardless of whether the insured person is actually charged with, or convicted of, a crime"* (emphasis added). Section 1668 provides that an insurance contract which indemnifies conduct involving a "violation of law, whether willful or negligent" is prohibited. Cal.Civ.Code § 1668.

The Ahls only objection to the criminal act exclusion and Section 1668 is that it violates the Federal Rules of Evidence because "a plea of nolo contendere" is not

"admissible against the defendant who made the plea." Fed.R.Evid. 410 (West 1984). However, at his deposition in the underlying case, Mr. Tankovich admits to leaving the racially offensive messages on the answering machine, to spray painting racially offensive words on the home, and to driving the truck on the front lawn and making threatening remarks. Even if Rule 410 is applicable here, Mr. Tankovich's admissions are sufficient to establish his criminal acts and preclude coverage of his civil liability for racial harassment. *Allstate Ins. Co. v. Gilbert*, 852 F.2d 449, 453 (9th Cir.1988).

II. *Plaintiff Allstate's Motion and Application for Default Judgment Against Defendant Frank Tankovich*

Allstate's motion for default judgment against Frank Tankovich is granted. Plaintiff Allstate has complied with all procedural requirements of Rule 55 and 50 U.S.C.App. § 520. The declaration of Jack D. Eskridge states that defendant Tankovich is not an infant, an incompetent, or a military servant. Although it appears that Mr. Tankovich has failed to make an appearance in this action, he has been provided with at least three days notice of this application for default judgment hearing. For purposes of this motion and application for default judgment, the factual allegation of Allstate's complaint that they are neither obligated to defend nor indemnify Frank Tankovich for his alleged racial harassment is taken as true. *Dundee Cement Co. v. Howard Pipe & Concrete Products*, 722 F.2d 1319, 1323 (7th Cir. 1983). Therefore, the declaratory relief which Allstate seeks against Frank Tankovich should be granted.

### CONCLUSION

Accordingly, the court finds that Allstate Insurance Company owes neither a duty to defend nor a duty to indemnify Frank Tankovich for any losses suffered by the Ahls.

IT IS SO ORDERED.